# CIRCUIT COURT OF THE CITY OF NORFOLK

Angela Mack

v.

Starwood Hotels
and Resorts Worldwide, Inc.,
and Stanley Leroy Quash

February 26, 2002

Case No. (Law) L01-2261

BY JUDGE LYDIA CALVERT TAYLOR

This personal injury case comes before the Court on the plaintiff's Motion for Default Judgment. For the reasons discussed below, the plaintiff's Motion for Default Judgment is denied, and the court, pursuant to its authority under Rule 1:9, retroactively deems the defendants' Grounds of Defense to be timely filed

*Facts*

On September 7, 2001, the plaintiff, Angela Mack, filed a Motion for Judgment in this Court seeking to recover $50,000,000 in compensatory damages for injuries she claimed to have suffered when she was struck by a vehicle at Norfolk International Airport. The Motion for Judgment named two defendants, Stanley Leroy Quash and Starwood Hotels and Resorts Worldwide, Inc. ("Starwood"). Defendant Leroy Quash was served with process by posting on September 13, 2001, and defendant Starwood, a California corporation registered to do business in Virginia, was served six days later on September 19.

On October 21, 2001, thirty-three days after Starwood was served in Virginia and twelve days after its responsive pleadings were due, the plaintiff moved for default judgment, sending notice to Starwood's registered agent of

a November 9 hearing on its motion. On November 6, the defendants, apparently having just received the notice of default, with an accompanying affidavit filed Grounds of Defense and "Opposition to Plaintiff's Motion for Default Judgment." The Defendant also called plaintiff's counsel in Virginia at about the same time. After both sides unsuccessfully sought to contact the other by telephone for two days, plaintiff's Virginia attorney left a message for defense counsel that he had called off the November 9 hearing asking for default judgment. Upon assignment of the case to me in late January, I initiated telephone contact with both counsel in order to get a scheduling order signed and a default judgment hearing set. The plaintiff then submitted a conflicting affidavit and responded to the defendant's brief opposing default judgment. Both sides then agreed that the Court should rule on default judgment without a hearing, on the submissions, and chose a trial date.

The defendants' affidavit claims that, on September 18, 2001, Paul Cullen, the plaintiff's California attorney, had informed Channing Robinson, an adjuster for a corporation acting as agent for defendant Starwood, that the plaintiff would not pursue litigation until the defendant had received the plaintiff's medical records. According to the defendants, Cullen also represented that, while he did not believe litigation had been initiated, if this belief were incorrect, the plaintiff would grant the defendant an extension of time in which to file a response. The defendants further claim that their failure to respond to the plaintiff's Motion for Judgment relied upon Cullen's statement that the plaintiff would not sue.

Plaintiff's California counsel, Paul Cullen, filed a conflicting affidavit outlining his version of the conversation with Robinson. Cullen admits that he had a conversation with Robinson "on or about September 14," but denies that he ever represented that the plaintiff would not litigate until her medical records had been forwarded to the defendant for review. Cullen insists that the plaintiff's medical records had already been forwarded to the defendant in a letter dated September 4, 2001, ten days prior to his conversation with Robinson.

Clearly, the Court cannot determine the credibility of witnesses on conflicting affidavits. However, the differences appear to be the result of faulty memory on the part of one or both affiants, or alternatively a misunderstanding or miscommunication by one or both sides as to what the other stated it would or would not do. It is impossible for the Court to place fault on one of the two affiants — both with plausible versions of the conversation — when the two witnesses are located 3,000 miles away. The Court's assumption then, is that both affiants, acting in good faith, misunderstood one another, and this assumption underlies the Court's

decision in this matter. A brief discussion of the Virginia case law on default judgments was helpful to the Court in exercising its discretion in this case.

## Discussion

A defendant is required to file his responsive pleadings within 21 days of receiving notice of the plaintiff's Motion for Judgment. Rule 3:5. If the defendant fails to file a timely response, he is in default. *Id.* A defendant who is in default waives his rights to trial by jury, to object to evidence, to receive notice of the proceedings against him, and to defend against liability. Rule 3:17. However, a court has discretion to extend the time allowed for the filing of pleadings, even if the time allowed has already expired. Rule 1:9. In the instant case, the defendants took more than 21 days to file their responsive pleadings. Thus, the Court must decide whether to exercise its discretion to grant the defendants a retroactive extension of time, based on their "Opposition to the Default Judgment." Defendants' "Opposition to Default Judgment" was filed with this Court November 6, 2001, three days before November 9, the date on which the default judgment hearing was scheduled. While the disposition of the instant motion lies in the sound discretion of this Court, the exercise of the Court's discretion, which must be reasonable, is guided by Virginia case law in the area.

A trial court's refusal to grant an extension of time for filing a responsive pleading can, under certain circumstances, constitute reversible error. In *Wilcox v. Lauterbach Elec. Co.*, 233 Va. 416 (1987), the plaintiff served the defendant with process in a Virginia action on May 18, 1985. Twenty days later, on June 7, the defendants filed a Petition in Bankruptcy in federal court. On June 10, the defendants filed a Suggestion in Bankruptcy in the Virginia trial court and moved that court to stay its proceedings pending resolution of the bankruptcy. The defendant's bankruptcy case was dismissed on July 29, and on August 6, the plaintiff moved the Virginia trial court to enter default judgment on its behalf. On August 22, the plaintiff's filed an "Opposition to Motion for Entry of Judgment by Default," which claimed that the plaintiffs were not in default because the Suggestion in Bankruptcy filed in state court constituted a responsive pleading in the state proceeding. The trial court, while admitting that the Suggestion in Bankruptcy was a responsive pleading, granted the defendant's Motion for Entry of Default Judgment. On appeal, the Virginia Supreme Court held that the trial court abused its discretion in entering default judgment for the plaintiff. The Supreme Court reasoned that, because, as the trial court itself had held, the Suggestion in Bankruptcy constituted a responsive pleading, the trial court erred in granting default judgment without affording the defendants an opportunity to file whatever

*further* responsive pleadings the court deemed necessary. *Id.* at 421. Although the facts of the case at bar are distinguishable from those of *Wilcox* — Starwood filed no responsive pleadings within 21 days of being served — the rationale of *Wilcox* is still persuasive; when defendants have acted in good faith and not caused egregious delay, courts should exercise their discretion to allow adjudication on the merits.

*Riddle v. CARS*, 45 Va. Cir. 236 (Rockingham, 1998), on the other hand, involved closely analogous facts and is highly persuasive in guiding the Court's discretion.[1] In *Riddle*, the defendants, a group of out-of-state limited liability entities, suffered a default judgment after failing to obtain Virginia counsel in time to file a timely responsive pleading. The trial court ultimately vacated the default judgment and granted the defendants fifteen days to file a responsive pleading because the defendants had made a "good faith, albeit futile effort to obtain Virginia counsel" in time to file responsive pleadings. *Id.* at 239. While not binding upon this court, *Riddle* is highly persuasive because it involves closely analogous facts and was well reasoned by the trial court. Both *Riddle* and the instant case involve out-of-state corporate defendants who, after failing to file a timely responsive pleading, diligently litigated their defense. The court believes that, as in *Riddle*, the defendants in the case at bar should not be subjected to potentially enormous liability — the plaintiff seeks $50,000,000 for her allegedly severe and permanent injuries — without an opportunity to present a defense on the merits. Both corporate defendants operated under the difficulty of being served thousands of miles from their headquarters, through a Virginia entity that serves as registered agent for numerous corporate entities. In both cases, the process by which notice reached the appropriate hands, the defendant's risk management department and thereafter its insurance adjusters and attorneys, was time consuming and circuitous, subject to a potential mistake at any number of different stages.[2]

---

[1] The plaintiff elliptically refers to this case in his letter to the Court, probably because the trial Judge originally granted the plaintiff default judgment. However, because the default judgment was ultimately withdrawn and the defendant allowed to defend on the merits, this case favors the defendant, not the plaintiff.

[2] Leroy Quash, the individual defendant, was more likely to receive actual notice on the record day of service at his Virginia residence. However, because Quash was merely served by posting and was not mailed a copy of the Motion for Judgment as certified by the plaintiff, Quash was not subject to default judgment until the service was perfected by mailing a copy of the process to him, along with certification of such mailing, at least ten days before entry of the default judgment.

The cases cited by the defendant are not helpful in guiding the exercise of the Court's discretion. *Levine v. Lacy*, 204 Va. 297 (1963), for example, does not address the exercise of the trial Court's discretion to grant an extension of time for filing pleadings, because the defendant in that case never filed such a motion. In *Levine*, the defendant received notice of the plaintiff's Motion for Judgment on February 13, 1961, and, more than 21 days later, on March 9, defendant petitioned to remove the case to the United States District Court for the Eastern District of Virginia, filing notice of removal in the clerk's office of the Virginia court where the case had been filed. On September 26, over six months after removal and seven months after service on the defendant, the federal court remanded the case to the Circuit Court of Loudoun County. Thirteen days later, on October 9, the Circuit Court awarded the plaintiff a default judgment. On appeal, the Virginia Supreme Court held that the entry of default judgment was proper under Rules 3:5 and 3:19, *Id.* at 302, noting that the defendant had never asked the trial court for an extension of time to file responsive pleadings. *Id.* at 301. Therefore, *Levine* gives no guidance as to how trial courts should exercise their discretion when requested to grant an extension of time for filing responsive pleadings, before default judgment has been granted.

Several cases in Virginia uphold a trial court's exercise of its discretion as proper when the trial court refused to grant the defendant an extension of time to file an answer. The facts in *Cooper v. Davis*, 199 Va. 472 (1957), for example, are particularly egregious. The defendant took over four months to file his Grounds of Defense, despite having been personally served with process in his local area by a sheriff's deputy. The defendant's claim to have "no recollection whatever" of having been served, *id.* at 474, was clearly disbelieved by the trial court. The trial court's entry of default judgment, disallowing the defendant's request to file a late answer, was almost compelled by the court's obvious inference that defendant's claim that he had no memory of being served was deceitful. "It is difficult to believe … that a defendant who has received written communication that a plaintiff is asserting a claim against him, would fail to read the papers thereafter served on him by a deputy city sergeant." *Id.* at 475 (quoting the trial court). *Cooper*, then, is distinguishable from the instant case in at least four respects. First, the defendant in *Cooper* was over three months late in filing his responsive pleading, whereas the defendant in the instant case was tardy by less than a month. Second, unlike the instant case, the defendant in *Cooper* apparently

---

Nothing in the record indicates this had been done ten days prior by the November 9 hearing date.

perjured himself in an effort to escape a default judgment. Third, service in *Cooper* was personal and in the defendant's home area, giving the defendant actual notice three weeks before his answer was due. Here, in contrast, the Virginia registered agent, once it got notice, had to forward service to the other side of the country, to a national corporation with its attendant red tape and bureaucracy, and Virginia counsel had to be hired 3,000 miles away before an answer could be filed. Fourth, in the instant case, the defendants' "Opposition to Default Judgment" was filed before default judgment was ever entered, whereas, in *Cooper*, default judgment had been entered, and the defendant filed to set it aside.

The plaintiff also cites *Callahan Const., Inc. v. Hardly Plumbing & Heating Corp.*, 53 Va. Cir. 352 (City of Roanoke, 2000), for the proposition that the courts should not award an extension merely to save defendants from the consequences of their own neglect. In *Callahan*, the trial court awarded the plaintiff default judgment after the defendant filed its responsive pleading eighteen days late. Critical to the court's refusal to grant the defendant an extension of time was its finding that: "In the case at hand, no extenuating circumstances or good cause exists, and the ends of justice do not require the exercise of the Court's discretion." In addition, it is not clear whether this decision would have been upheld if appealed.

*Callahan* is of little value in guiding the Court's discretion because of its distinguishable facts. The defendant here has demonstrated good cause for its failure to file a timely responsive pleading: the confusion resulting from dealing with both the plaintiff's California and Virginia counsel, the lengthy and circuitous process of getting notice to the defendants' attorney in Virginia, and the defendants' mistaken belief that the plaintiff did not expect it to file a responsive pleading because of ongoing settlement negotiations. Because *Callahan* was decided on substantially different facts, it offers no real guidance to this Court's exercise of discretion in the instant case.

For the reasons set out above, this Court finds the defendant's "Opposition to Default Judgment" to be persuasive; accordingly, the Court denies the plaintiff's Motion for Default Judgment and, pursuant to Rule 1:9, retroactively deems the defendants' Grounds of Defense to be timely filed. However, if the plaintiff has incurred attorney's fees in unsuccessfully seeking default judgment, this court will consider an award of attorney's fees against the defendant for its tardiness in answering. That issue should be briefed if the plaintiff chooses to pursue the matter.