## Wytheville

PROVIDENCE FORGE FISHING AND HUNTING CLUB, INC., AND ANOTHER V. GILL.

June 10, 1915.

1. DEEDS—*Recordation—Chain of Title—Notice.*—The record of a deed outside of a purchaser's chain of title is not constructive notice to him of its contents, although it may contain information relating to the title, but if he sees and reads the deed before making his purchase, he has actual notice of its contents.

2. DEEDS—*Outside of Chain of Title—Recordation—Notice—Case in Judgment.*—For a deed and its recitals to operate as constructive notice to a *bona fide* purchaser of land, it must be a link in the purchaser's chain of title. A purchaser is not chargeable with constructive notice of all matters of record, but only of such as the title deeds of the estate refer to, or put him on inquiry for. A prior deed of trust, duly recorded, conveying all of a designated tract of land except ten acres previously sold to A. is not constructive notice to a subsequent purchaser of the ten acres that it had been sold to A., as the deed of trust is no part of the chain of title to the ten acres, and the purchaser thereof does not have to make out his title through it.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for the complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*Lamb & Lamb* and *Charles L. Page,* for the appellant.

*Christian, Gordon & Christian* and *L. M. Nance,* for the appellee.

HARRISON, J., delivered the opinion of the court.

The bill in this case was filed by the appellee, William I. Gill, to obtain specific performance of a contract for the sale and purchase of certain real estate, made with him by one J. M. Bossieux as the agent of the appellant, Providence Forge Fishing and Hunting Club, Inc., hereinafter for convenience spoken of as the "Club." Subsequent to the making of the alleged contract with Gill, the Club sold and conveyed the land involved to one Gilbert K. Pollock, who was made a party defendant to the bill and is one of the appellants before this court.

It appears that on September 5, 1911, the board of directors of the Club adopted a resolution authorizing J. N. Bossieux, as its agent, to sell a tract of land containing ten acres more or less with improvements thereon, belonging to the Club, providing that any less offer than $1,000 should be reported to the board. Acting under the authority of this resolution, Bossieux, as agent for the Club, made a contract in writing dated October 14, 1911, with William I. Gill, agreeing to sell him the ten acres and improvements thereon for $1,000, to be paid within sixty days, and providing that the deed from the vendor to the vendee should contain a covenant that the stream bounding the property on the east should not be obstructed so as to prevent the free passage of fish up and down the same. After the adoption of the resolution of September 5, 1911, authorizing the sale of the ten acres, no further action with respect to the matter was taken by the board of directors of the Club until March 8, 1912, on which day the following resolution was adopted:

"Whereas, William I. Gill failed to comply with his contract of the 14th day of October, 1911, and failed to pay the sum of $1,000, the contract price for the ten acres of land. with dwelling, stable and improvements thereon,

within sixty days as provided by said contract; and whereas no extension of time was ever authorized by the board of directors of this Club; Be it resolved, that said contract be cancelled and the sum of $100.00 paid by said Gill be returned to him."

The foregoing action of the board of directors was followed on the same day by the adoption of the following resolution: "Whereas this club has received an offer of $1000.00 from G. K. Pollock for the ten acres of land with dwelling, stable and other improvements thereon, the same to be paid in cash: Be it resolved that the president and secretary be directed to convey to said G. K. Pollock said ten acres of land with dwelling, stable and improvements thereon, when and as soon as he shall have paid the sum of $1,000.00." In pursuance of this resolution G. K. Pollock paid the purchase price of $1,000.00 and received a deed duly executed by the officers of the Club, which was recorded March 29, 1912.

There has been much discussion of questions between the Club and Gill growing out of the contract of sale between the latter and Bossieux, agent, particularly as to how far the Club was bound by certain dealings of the agent with Gill. In our view of the case, these contentions throw no light upon the crucial question involved, and, therefore, need not be considered. There is no question that the appellant, Gilbert K. Pollock, bought the ten acres and its improvements, paid the purchase money therefor and received a deed from the Club conveying him the same, which was duly recorded. The sole question, therefore, is whether or not Pollock is a *bona fide* purchaser for value and without notice of the rights asserted by Gill.

The proof wholly fails to sustain the contention that the appellants were guilty of fraud in selling the property in question to G. K. Pollock. It is clear from the record that the appellant, Pollock, had no actual notice of the

rights asserted by Gill, which leaves as the only open question whether or not he had constructive notice of any such rights.

The sole ground for the contention that Pollock had constructive notice of Gill's claim is a recital in a certain deed of trust to which neither Gill nor Pollock was a party, and which deed did not affect the property involved in any manner. It appears that in November, 1911, the Club conveyed its real estate in trust to secure its note for $2,000. The property is described in the deed of trust as containing 111½ acres except nine acres conveyed to James H. Christian, and "except a tract of land estimated to contain ten acres * * *. which the party of the first part has agreed to sell to William I. Gill." For convenience of description this deed of trust conveyed in the first instance the entire tract originally purchased by the Club, but immediately by apt words expressly excepted the ten acres in question from the grant, so that the deed did not prejudice or affect in any manner the title to the ten acres. Had Pollock examined the records before buying and discovered and read this deed of trust, he would undoubtedly have acquired notice of Gill's agreement to purchase. This would, however, have been actual notice, which is not shown, instead of the implied or constructive notice which is here relied on and sought to be imputed to Pollock.

The established rule is that for a deed and its recitals to operate as constructive notice to a *bona fide* purchaser of land, it must be a link in the purchaser's chain of title. A purchaser is not chargeable with constructive notice of all matters of record, but only of such as the title deeds of the estate refer to, or put him on inquiry for. *Lewis* v. *Barnhardt,* 145 U. S. 56, 12 Sup. Ct. 772, 36 L. Ed. 621; *Le Neve* v. *Le Neve,* 2 Lead. Cas. in Eq. 189-190, *et seq.; Meacham* v. *Blaess, &c.* 141 Mich. 258, 104 N. W. 579; *Pillow* v. *So. W. Imp. Co.,* 92 Va. 144, 23 S. E. 32, 53 Am. St. Rep. 804; *Flanary* v. *Kane,* 102 Va. 547, 46 S. E. 312, 681.

In *Lewis* v. *Barnhardt, supra,* Mr. Justice Harlan, speaking of the recitals in a deed which lay outside of the chain of title, says: "Some reliance is placed upon the fact that the recitals in a deed for certain lands, made by Mrs. Lewis to one Mohr in 1853, indicated that they were devised to her by the will of her husband. It is scarcely necessary to say that those recitals were not notice to those who purchased other lands from Mrs. Lewis, of the existence of such a will or of its provisions, there being no valid record of it in Illinois."

The principle applied in this case is equally applicable to the present case, the effort in each being to impute notice from recitals in a deed, outside of the chain of title, conveying other lands by the same grantor.

In 23 Am. & Eng. Ency. L., p. 510, the law is thus stated: "The rule that a purchaser is chargeable with constructive notice of the contents of all instruments appearing in his chain of title does not apply to instruments that do not constitute a part of his chain of title, and do not necessarily relate to it. As to the contents of such instruments the purchaser is not put upon inquiry."

In 39 Cyc., p. 1719, it is said: "A deed lying outside of a purchaser's chain of title imparts no notice to him. Thus a recital in a deed cannot affect a purchaser with notice respecting any other land than that which is conveyed by it; nor is it notice to another purchaser of different land from the same grantor."

The result of the law as it is laid down in Pomeroy's Equity is that the doctrine of notice by recital in a prior deed applies only where the subsequent purchaser is obliged to make out his title through the deed in which the recital occurs. In other words, the recital, to bind the purchaser, must lie in the path of his title, not outside of it. Pom. Eq. Jur., Vol. 2, sec. 626.

71

It is clear that the deed of trust containing the recital relied on is not a link in the chain of title to the ten acres of land bought from the club by the appellant, Pollock. He does not claim through it or against it; nor does it convey or concern the land purchased by him, but conveys other land of the grantor in which he has no interest.

We are of opinion that inasmuch as the deed of trust relied on is wholly apart from and outside of the appellant Pollock's chain of title to the ten acres of land purchased by him, he is not charged by its recitals with constructive notice of the unrecorded contract which the appellee Gill claims under.

It should have been stated at the outset of this opinion that the demurrer to the bill was properly overruled.

The decree of July 17, 1914, appealed from, must be reversed, and this court will enter such decree as the lower court ought to have entered, dismissing the complainant's bill with costs.

*Reversed.*