Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Compton, S.J.

FREDERICK J. SHAHEEN, ET AL.

v. Record No. 021350   OPINION BY JUSTICE CYNTHIA D. KINSER
                                    April 17, 2003
COUNTY OF MATHEWS, ET AL.

FROM THE CIRCUIT COURT OF MATHEWS COUNTY
William H. Shaw, III, Judge


Frederick J. Shaheen and Susan L. Shaheen challenge
the circuit court's judgment permitting the County of
Mathews and the Board of Supervisors of Mathews County to
withdraw admissions under Rule 4:11(b) and affirming an
easement in a landing and road for the benefit of the
public.  Because the admissions effectively eliminated
presentation of the case on its merits and the Shaheens did
not show that they would be prejudiced in maintaining their
defense on the merits, we will affirm the circuit court's
judgment on that issue.  We will also affirm the court's
judgment regarding the easement because the Shaheens were
not innocent purchasers without constructive notice in
their chain of title regarding the public landing and road,
and because they implicitly agreed to a 1959 description of
the landing.

I. MATERIAL FACTS AND PROCEEDINGS

The Shaheens own a 4.52-acre parcel of real estate located in Mathews County. The parcel is part of a larger tract of land formerly known as "Auburn." A plat of a survey of the Shaheens' property, which was referred to in their December 21, 1994 deed and recorded in the land records of Mathews County, delineated an area identified as the "Auburn Public Landing" situated on the North River and a road, 40 feet in width, extending from the landing along the eastern edge of the Shaheens' property. Both the landing and the road are situated within the boundaries of the Shaheens' parcel. The plat also contained a reference to the Mathews County Board of Supervisors Minute Book (Supervisors Minute Book) 4, at page 370 (where the Board had directed that a March 14, 1959 plat of the landing and road be recorded in the County's land records), and Plat Book 5, at page 8 (where the 1959 plat was recorded).

After purchasing their property, the Shaheens placed barriers and no trespassing signs on the road leading to the landing, thereby blocking access to both the road and the landing. As a result of the Shaheens' actions, the County and its Board of Supervisors (collectively, "the County") filed a bill of complaint against the Shaheens. The County asked the circuit court to "affirm" its fee simple ownership of the landing and road or, alternatively,

2

to "affirm" the existence of an easement for public use of the landing and road.  The County also asked the court to "affirm" the dimensions of the road and landing and to enjoin the Shaheens from interfering with the public's use of those areas.

The County's alleged ownership of the "Auburn Public Landing" and the road, formerly referred to as the "Wharf Road," was based on a petition filed in 1896 by Thomas F. Nelson and others in the County Court of Mathews County (the Nelson suit).  One of the petitioners was Morgan J. Evans, who, along with trustees for his wife, owned the tract of land known as "Auburn."  The petitioners asked the court to open a public landing and road

> commencing in front of the residence of J.W. Down, which is situated on the public road leading from Mathews Court House to Gloucester Court House; and running in a southwesterly direction to a point on North [R]iver at the intersection of the boundary line between the lands of Mr. Morgan J. Evans and Dr. H.W.M. Washington, better known as Auburn and Green [P]lains farms:  The said road [and] landing on Auburn farm[.]

Based on reports filed by "viewers" and "commissioners" appointed in that proceeding, the court "establish[ed] the road and landing as in the petition prayed and as set forth in the diagram filed with the report."  "[I]t further appearing that all the land owners

3

will give to the county the proposed road save and except H W M Washington [and] wife and that Morgan J Evans will give a landing on North River of one half acre without compensation[,]" the court ordered the county surveyor to lay off a road "over the lands of Morgan J. Evans to North River . . . 33 feet wide, and lay off the landing of [o]ne half acre at the terminus of said road on North River in such place as the said Morgan J Evans may direct." On December 15, 1897, H. C. Jones, a county commissioner, informed the court that he had "been over the road leading . . . to North River[.]" He reported that the road was "33 ft. wide from where it begins at Auburn farm[,]" and the landing was "51 X 138 ft. including the width of [the] road[.]"

The orders entered by the court in the Nelson suit were recorded in the Minute Books of the County Court of Mathews County (County Court Minute Books). The indices found in the front of those individual books contained entries from T. F. Nelson to the County and from the County to Nelson. The orders were not indexed in the name of the landowner, Morgan J. Evans. The diagram referred to by the court when it established the road and landing was filed with the papers in the Nelson suit, but it was not recorded in the County Court Minute Books or in a plat book. The

4

diagram showed only the road and did not depict the landing.

In 1955, the Board of Supervisors of Mathews County requested an attorney, Alfred L. Marchant, to review the records regarding the Auburn road and landing.  Marchant reported that, although a public road and landing had been established in 1896 or 1897 as a result of the Nelson suit and although both could be readily observed,

> the exact boundaries of [the landing] appear
> impossible of determination from the records, as
> no survey of the same can be located, and if it
> is the desire of the Board to have this area
> definitely established it will appear necessary
> to do so by mutual agreement between the Board
> and the present owners of the Auburn property,
> and if this is done it is suggested that a survey
> of the same be made[.]

The next year, William C. Coulbourn, the Commonwealth's Attorney, filed with the Board a "Plat of Survey of the Auburn Public Landing . . . and the road to it from the present hard surfaced road."  Jefferson K. Sinclair prepared that plat, which was dated July 29, 1956. According to its minutes, the Board suggested "that if a slight change can be made in the western boundary of the landing near a small house on the 'Auburn' property, the boundary lines as established by the said survey will be

5

accepted by all parties." Sinclair then prepared a revised plat dated March 14, 1959.[1]

When that plat was filed with the Board at its April 29, 1959 meeting, the Board stated in its minutes that the revised plat of survey "gives the correct and definite boundaries of said public landing area," and ordered that "it be approved as showing the exact boundaries of said public landing area and the public road leading thereto." The revised plat was recorded in the land records of Mathews County in Plat Book 5, at page 8. It is the plat referenced on the Shaheens' plat of their property. Despite attempts by the County to obtain the owner's consent, the owner of Auburn at that time did not sign Sinclair's 1959 plat or otherwise indicate consent to or agreement with the boundaries of the public landing as shown on that plat. However, in a letter to Sinclair

---

[1] At trial, Charles J. Kerns testified that he assisted Sinclair in performing the 1956 survey. Kerns stated that the low water mark appearing on the revised plat was the same as that used on the 1956 plat. He also testified that, during the 1956 survey, no attempt was made to determine the 1896 low water mark. Kerns admitted that, although it was possible to determine how much erosion had occurred in the landing area since 1896, that determination was not made during the survey. He agreed that it would be difficult for a surveyor to take the orders in the Nelson suit and draw a description of the landing without making some assumptions, in part, because the landing's dimensions specified in those orders did not equate to one-half acre.

requesting that he resurvey the landing and prepare a revised plat, Coulbourn advised that he had been informed that the owner of Auburn had consented to a change "in the fence line separating the public landing from the Auburn property."

At trial, the Shaheens presented testimony from two title examiners who stated that they were unable to find any instrument in the Shaheens' chain of title that vested in the County either title or an easement in the Auburn landing and road, or that indicated the source of the County's claimed ownership. Both title examiners reached their respective conclusions despite the language found in a 1901 deed from Morgan J. Evans and others to Charles Heath.[2] The derivative clause of that deed "except[ed] that portion of Auburn Farm now used as a public road and leading down to what is called and known as Auburn Wharf located upon the Auburn property." Similarly, a 1898 lease from Evans and others described the leased premises as "one half of an acre of land . . . at the foot of the public road running through the lands of [Morgan Evans] and adjoining the public landing on North River."

---

[2] The grantors in that deed also included Evans' wife and three individuals who were trustees for the benefit of Evans' wife.

Michael Malone, who was hired by the Shaheens to perform a title examination prior to purchasing their parcel of real estate, was one of the title examiners testifying at trial.  He stated that, although the reference on the Shaheen's plat to the "Auburn Public Landing" and to the Plat Book and Supervisors Minute Book alerted him that there might be documents regarding a public landing and road, neither the recorded 1959 plat nor the Supervisors Minute Book mentioned the Nelson suit.  He testified that, "upon scour[ing] the ind[ices] for owners of Auburn," including Morgan J. Evans, he was unable to find anything "pertaining to [the] creation of the landing or the road."  However, virtually all his conclusions were based on his search of the general indices to the County's land records.[3]  For example, Malone stated that he checked for the County's name in the grantee general indices.  But, he could not recall whether he looked for the County's name in the indices to the County Court Minute Books although he had searched for Morgan J. Evans' name in the indices to

---

[3] The general indices to the County's land records now cover the period back to 1865, but the circuit court clerk did not know when those indices were compiled.

8

those books.[4]  Malone also reported disclaimers in a succession of deeds after Sinclair's 1959 plat was recorded rejecting that plat and disavowing the existence of a public landing and road.  Finally, he stated that the records kept by the commissioner of the revenue during the time of the Nelson suit did not reflect any reduction in the amount of land owned by Evans.

The second title examiner, David Adams, testified that he also found nothing in the Shaheen's chain of title that referenced the 1896 Nelson suit.  Adams opined that, based on record title, the Shaheens own the road and Auburn landing claimed by the County.  His opinion, like that of Malone, was primarily based on a search of the general indices to the County's land records.

A certified land surveyor, James R. Gray, testified at trial.  Gray indicated that the 1959 Sinclair plat depicted the road as 40 feet in width, whereas the court's order in the Nelson suit established it as 33 feet wide.  He also stated that a surveyor could not use the one-half acre designation of the landing or the dimensions specified in the Nelson suit and accurately survey and plat the Auburn landing.  Using old, recorded surveys, triangulation

---

[4] The County conceded at trial that the name of Morgan J. Evans is not listed in the indicies to the County Court

9

points, and other data, Gray opined that the Auburn landing, as designated in 1896, is now under water.

On August 6, 1998, during pretrial discovery, the Shaheens filed a request for admissions. They subsequently filed a second request for admissions on September 22, 1998. The County did not respond to either request for admissions until November 6, 1998. That same day, the County filed a motion acknowledging that its responses had not been filed within the 21 days specified by Rule 4:11 but requesting that "the Answers to [the Shaheens'] Request for Admissions be accepted rather than the Admissions themselves set forth in the Request for Admissions being admitted." The Shaheens objected, stating that, "[p]ursuant to Rule 4:11 . . . , the matters contained in the defendants' request for admission and the defendants' second request for admissions are deemed admitted." During a telephonic hearing two days before the trial date, a transcript of which is not part of the record in this case, the circuit court indicated that it would allow the County to file the late responses.

The circuit court considered the County's motion again on the morning of trial. The court allowed the County to withdraw the admissions that were "deemed admitted by [Rule

_____

Minute Books.

4:11] and the passage of time."  The court stated that Rule 4:11 was not intended to put "the responding party in a position of admitting away his case[,]" or "to deal with controverted facts."  The court concluded that the admissions taken as a whole would, in fact, result in the County's "admitting away the case."  However, the court indicated that, "[i]f it turns out that in order to prove something that [the Shaheens] thought was admitted but is not by virtue of [this] ruling," it would recess the trial to give the Shaheens time "to provide the support or basis for the fact or item that they thought had been admitted." Finally, the court required the County to pay the expense of all or a part of the trial transcript if the Shaheens needed it in order to present additional evidence with regard to the withdrawn admissions.

Consequently, after hearing evidence, the court recessed the trial for approximately eight months.[5]  When

---

[5] At the recessed hearing, Adams testified on behalf of the Shaheens again.  He reiterated that T. F. Nelson was "[a] stranger" to the Shaheens' chain of title.  However, he acknowledged that the references to the Supervisors Minute Book and the 1959 Sinclair plat that appear on the plat of the Shaheens' property put him on a duty to inquire about a conflicting claim of ownership.  Douglas W. Dewing also testified at that hearing as an expert in title examinations.  He agreed that there were enough references to a public landing and road in the Shaheens' chain of title to require a title examiner to investigate the matter, but he stated that, given the facts in this case, a

the trial reconvened, the Shaheens again moved the court to deem the "matters set forth in [their] first and second request for admissions" admitted pursuant to Rule 4:11 and asked for summary judgment based on those admissions. The court denied both motions.

In a letter opinion, the court again addressed the issue regarding the requests for admissions. Noting that Rule 4:11(b) gives a court discretion to allow a party to amend or withdraw an admission, the court concluded that it was proper, given the issues involved in the case, to permit the County to withdraw the " 'admission[s].' " The court explained:

> The merits of this case should have been developed only by a full hearing. The County's claim for a fee simple title or an easement was pleaded and rested upon the records. If the County has by default admitted a matter that is not only genuinely in dispute, but the core of its case, then the merits are not served by application of the rule. There was no real urgency to resolve the case beyond the desire for and convenience of the prompt resolution of the issues. . . . Further, the Court ordered that the County pay certain costs for the defendants' inconvenience. The defendants were not prejudiced in maintaining their defense on the merits.

_____
title examiner would not have been able to find an instrument vesting in the County either fee simple interest or an easement in the road and landing. Dewing also opined that the 1896 description of the landing was "void for vagueness."

With regard to the merits of the case, the court, in its letter opinion, concluded that "[t]he road and landing were properly established by the [c]ourt under the prevailing law and the orders issued in the [Nelson] suit [were] properly recorded in the Minute Books of the County Court of Mathews County and indexed in the Books, all in County clerk's office." The Court noted that the existence of the road and landing for the benefit of the public was recognized not only by Morgan J. Evans in a subsequent lease and deed but also by some other owners of Auburn. Although the court concluded that "the evidence would just as likely affirm the existence of fee simple ownership," it granted the County's requested affirmation of a public easement in the Auburn landing and road. Finally, the court established the location of the road and landing as shown on the 1959 Sinclair plat.

In summary, the court concluded that the County had "established an easement for the benefit of the public on and over the road and landing shown on the Sinclair plat" and that, when the Shaheens "took title to their property, they had actual notice of the physical existence of the road and landing, as well as constructive notice thereof, as a matter of law." The court subsequently entered a final order incorporating its letter opinion and

permanently enjoining the Shaheens from interfering with the free use and enjoyment of the easement for a public road and public landing. The Shaheens appeal from that judgment.

## II. ANALYSIS

On appeal, the Shaheens raise five assignments of error: (1) the circuit court erred by allowing the County to withdraw its admissions; (2) the court "erred by deciding that the [C]ounty had properly recorded an instrument vesting title in the [C]ounty to the claimed road and landing[;]" (3) the court erred by finding that "there was an instrument in the Shaheens' chain of title giving notice of the [C]ounty's ownership[;]" (4) the court erred by finding that "the 1896 description of the landing was valid[;]" and (5) "[t]he [C]ounty had the burden of proof, and it failed to meet that burden." We will address the assignments of error in that order.

## A. ADMISSIONS

The Shaheens acknowledge that a trial court has discretion under Rule 4:11 with regard to whether a party should be allowed to amend or withdraw admissions. However, they assert that, in this case, the circuit court abused its discretion by allowing the County to file responses to two sets of requests for admissions when those

14

responses were, according to the Shaheens' calculations, "71" and "24" days late, respectively, and the County did not offer any reason or excuse for its tardiness. Accordingly, the Shaheens request this Court to reverse the judgment of the circuit court and hold that the requests for admissions were deemed admitted. The issue before us is whether the circuit court abused its discretion in allowing the County to withdraw the admissions.

Several provisions of Rule 4:11 are relevant to this question.[6] Pursuant to Rule 4:11(a), "[e]ach matter of which an admission is requested" is deemed admitted if "the party to whom the request is directed" does not serve "upon the party requesting the admission a written answer or objection addressed to the matter" within 21 days after service of the request. Any matter admitted under the provisions of Rule 4:11 is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." Rule 4:11(b). A trial court's discretion to permit such withdrawal or amendment must be exercised within certain parameters: (1)"when the presentation of the

_____

[6] Rule 4:11 is virtually identical to Rule 36 of the Federal Rules of Civil Procedure. <u>TransiLift Equip., Ltd. v. Cunningham</u>, 234 Va. 84, 90, 360 S.E.2d 183, 187 (1987). Thus, federal courts' interpretations of Rule 36 are informative but not necessarily binding on this Court. <u>See</u>

merits of the action will be subserved thereby[;]" and (2) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits."  Rule 4:11(b); see American Automobile Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1119 (5th Cir. 1991); Farr Man & Co., Inc. v. M/V Rozita, 903 F.2d 871, 875-76 (1st Cir. 1990); Farm Credit Bank of Omaha v. McLaughlin, 474 N.W.2d 883, 887 (N.D. 1991).

Some courts have referred to these parameters as a "two-part test."  E.g., Perez v. Miami-Dade County, 297 F.3d 1255, 1264 (11th Cir. 2002), cert. denied ___ U.S. ___, 123 S.Ct. 1291 (2003); Federal Deposit Ins. Corp. v. Prusia, 18 F.3d 637, 640 (8th Cir. 1994); American Automobile Ass'n, 930 F.2d at 1119; Farr, 903 F.2d at 876; Farm Credit, 74 N.W.2d at 887; Tank v. Munstedt, 504 N.W.2d 866, 868 (S.D. 1993); In re Pendleton, 11 P.3d 284, 295 (Utah 2000).  This test, which we adopt, " 'emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice.' "  Perez, 297 F.3d at 1265

---

Brown v. Black, 260 Va. 305, 311, 534 S.E.2d 727, 730 (2000).

(quoting Smith v. First Nat'l Bank of Atlanta, 837 F.2d 1575, 1577-78 (11th Cir. 1988)).

Under the first prong of this two-part test, the moving party has the burden to demonstrate that withdrawal or amendment of an admission will "subserve" the presentation of the merits of the action. Gary Mun. Airport Auth. v. Peters, 550 N.E.2d 828, 831 (Ind. App. 1990); Farm Credit, 474 N.W.2d at 888. This aspect of the test is "satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995); accord Perez, 297 F.3d at 1266; Prusia, 18 F.3d at 640; ADM Agri-Industries, Ltd. V. Harvey, 200 F.R.D. 467, 471 (M.D. Ala. 2001); Westmoreland v. Triumph Motorcycle Corp., 71 F.R.D. 192, 193 (D. Conn. 1976); Gary Munc. Airport, 550 N.E.2d at 831; Farm Credit, 474 N.W.2d at 888.

The record in this case demonstrates that the County satisfied the first prong of the two-part test. The circuit court found that the admissions, viewed as a whole, would result in the County's "admitting away the case," and we agree. For example, the Shaheens requested the County to admit that it had not recorded in the land records of Mathews County the final order in the Nelson suit and that

17

there was no index reference in the land records of Mathews County reflecting the County's ownership interest in the road and landing site at Auburn.  The County admitted by default matters that were at the core of its case.  Thus, allowing the County to withdraw the admissions aided in the " 'ascertainment of the truth and the development of the merits.' "  Smith, 837 F.2d at 1577 (quoting with approval the district court's opinion in that case).  The admissions in this case, if not withdrawn, would have "practically eliminate[d] any presentation of the merits of the case." Hadley, 45 F.3d at 1348.

The second prong of the two-part test in Rule 4:11(b) requires the non-moving party to demonstrate that amendment or withdrawal of an admission will prejudice that party in maintaining the action or a defense.  This prejudice has been described as

> not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth.  Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions.

Brook Village North Assocs. v. General Elec. Co., 686 F.2d 66, 70 (1st Cir. 1982); accord Gallegos v. City of Los Angeles, 308 F.3d 987, 993 (9th Cir. 2002); Hadley, 45 F.3d

at 1348; Prusia, 18 F.3d at 640; American Automobile Ass'n, 930 F.2d at 1120; Smith, 837 F.2d at 1578; Farm Credit, 474 N.W.2d at 888.

In this case, the Shaheens did not establish this type of prejudice. Instead, the Shaheens focused on the lateness of the County's responses to the requests for admissions and the unfairness of allowing the County to withdraw the admissions less than 48 hours before commencement of the trial. They did not demonstrate that they would have difficulty in the presentation of their defense or that they were less able to obtain the evidence needed to prove the matters that had been admitted.

Furthermore, the court recessed for several months in order for the Shaheens to present additional evidence regarding the withdrawn admissions and required the County to bear certain costs to facilitate the Shaheens' presentation of that evidence. The court also noted that the County had responded to the requests for admissions "with great deliberation" and that the County, at one point, had opened its file to the Shaheens. Any inconvenience suffered by the Shaheens did not involve the type or level of prejudice that would have justified a denial of the County's motion to withdraw or amend the admissions.

Therefore, we hold that the circuit court did not abuse its discretion in allowing the County to withdraw and amend the admissions since those admissions effectively eliminated presentation of the case on its merits and the Shaheens did not show that they would be prejudiced in maintaining their defense on the merits.[7]  Our decision today does not diminish the seriousness of requests for admissions or the requirements for prompt responses.  The purpose of Rule 4:11 is to expedite a trial by narrowing the contested facts and issues, but the rule should not be used as a weapon "with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements."  Perez, 297 F.3d at 1268.  Even though the consequences of failing to comply with the requirements of Rule 4:11 are harsh, a party who does so should not readily escape those consequences.

B. INSTRUMENT IN SHAHEENS' CHAIN OF TITLE

The crux of the Shaheens' second and third assignments of error is that the County failed to record properly the final order in the Nelson suit that established the public landing and road.  Relying on § 2510 of the 1887 Code, they

---

[7] In light of our decision, it is not necessary to address an issue discussed by the circuit court in its letter opinion, whether a request for admissions can only be used to force the admission of facts not in dispute.

claim that the order should have been recorded in a deed book rather than in the County Court Minute Books.[8]  Because of the alleged improper recordation of the order, the Shaheens assert that there is no instrument in their chain of title giving notice of the County's interest in the public landing and road.

It is not necessary for this Court to decide whether the provisions of § 2510 of the 1887 Code required the final order in the Nelson suit to be recorded in a deed book.[9]  The dispositive issue is whether there is an

---

[8] At oral argument, the Shaheens acknowledged that, if the final order in the Nelson suit had been recorded in a deed book, the order would have been sufficient, except for an allegedly inadequate description, to vest in the County either a fee simple interest or an easement.  Thus, we do not need to address their arguments or their experts' testimony suggesting that the order was insufficient on its face to vest title in the County to the road and landing.  Moreover, the circuit court found that "[t]he road and landing were properly established by the [c]ourt under the prevailing law."  This finding is not the subject of an assignment of error.  See Rule 5:17.

[9] In pertinent part, § 2510 of the 1887 Code provided that

> [t]he clerk of the court wherein there is any partition of, or assignment of dower in, land under any order, or any recovery of land under judgment or decree, shall transmit to the clerk of the court of each county or corporation wherein such land is . . . a copy of such order . . . [a]nd the clerk of court of such county or corporation . . . shall record the same in his deed book, and index it in the name of the person who had the land before, and also in the name of the person who became entitled under such partition, assignment, or recovery.

instrument in the Shaheens' chain of title giving constructive notice of the County's claim either to a fee simple interest or an easement in the Auburn landing and road.  The issue of constructive notice implicates the provisions of § 2465 of the 1887 Code.  That statute, which was in effect while the Nelson suit was pending, provided that

> [e]very such contract in writing, every deed conveying any such estate or term, and every deed of gift, or deed of trust, or mortgage, conveying real estate or goods and chattels, shall be void as to subsequent purchasers for valuable consideration without notice, and creditors, until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed may be.

See Jones v. Folks, 149 Va. 140, 144, 140 S.E. 126, 127 (1927) for a discussion of this statute.  See also, Code § 55-96 (current version of former § 2465).  If, as the Shaheens contend, there is no instrument in their chain of title giving constructive notice of the County's claim, then the final order in the Nelson suit establishing the public landing and road is "void" as to the Shaheens, who were "subsequent purchasers."  Code § 2465.

"The main purpose of recordation statutes is to give constructive notice to purchasers and encumbrancers who

_____

The Shaheens did not cite this statutory provision in the

22

acquire or seek to acquire some interest or right in property." Chavis v. Gibbs, 198 Va. 379, 381, 94 S.E.2d 195, 197 (1956). "[W]here a party purchases an estate which is subject to the right of another, and that right is shown by the chain of title papers, the purchaser is charged with notice of all that the title paper or papers to which they refer may disclose upon complete examination." Id. at 382, 94 S.E.2d at 197 (citing Effinger v. Hall, 81 Va. 94, 105 (1885); Burwell's Adm'rs v. Fauber, 62 Va. (21 Gratt.) 446, 463 (1871); Virginia Iron & Coke Co. v. Roberts, 103 Va. 661, 681, 49 S.E. 984, 986, (1905)); see also Fox v. Templeton, 229 Va. 380, 385, 329 S.E.2d 6, 8-9 (1985). However, a bona fide purchaser is charged with constructive notice of only those matters of record in the purchaser's chain of title referred to or about which the purchaser is placed on inquiry. Kiser v. Clinchfield Coal Corp., 200 Va. 517, 523, 106 S.E.2d 601, 606 (1959); Providence Forge Fishing & Hunting Club v. Gill, 117 Va. 557, 560, 85 S.E. 464, 465 (1915).

> To constitute constructive notice,
>
> the registered or recorded instrument must afford to subsequent purchasers or [i]ncumbrancers the means of not only ascertaining with accuracy what property is conveyed or affected by the instrument registered or recorded and where it

_____

proceedings before the circuit court.

23

> is, but its language must be such that, if a subsequent purchaser or incumbrancer should examine the instrument itself, he would obtain thereby actual notice of all the rights which were intended to be created or conferred by it; and if it contained these essential requisites the registry or recordation thereof operates as constructive notice to subsequent purchasers and incumbrancers[.]

National Cash Register Co. v. Burrow, 110 Va. 785, 790, 67 S.E. 370, 371-72 (1910). Stated differently, a purchaser "must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice." Burwell's Adm'rs, 62 Va. (21 Gratt.) at 463; quoted in Chavis, 198 Va. at 383, 94 S.E.2d at 198. Only a purchaser without notice can take advantage of a failure to record an instrument. National Mut. Bldg. & Loan Ass'n v. Blair, 98 Va. 490, 498, 36 S.E. 513, 515 (1900).

In this case, there were three instruments in the Shaheens' chain of title giving constructive notice of the County's interest in the public landing and road. The first two instruments were the 1898 lease and the 1901 deed from Morgan J. Evans, a predecessor-in-title to the Shaheens and one of the petitioners in the Nelson suit.

24

The third instrument was the plat of the Shaheens' property.

Specifically, the 1901 deed contained the following relevant language:

> The property herein conveyed being the same property conveyed to Morgan J. Evans . . . by . . . . Deed dated October 20, 1893 and recorded in the Clerk's Office of Mathews County, Virginia . . . , (save and except that portion of Auburn Farm now used as a public road and leading down to what is called and known as "Auburn Wharf," located upon the Auburn property[)].

Although this exception appeared in the derivative clause of that deed, it, nevertheless, placed subsequent purchasers, including the Shaheens, on notice that there was a public road and landing located on the Auburn property. The 1898 lease also referred to a "public road running through the lands of [Morgan Evans] and adjoining the public landing on North River."

"[T]he recordation of an instrument gives constructive notice of all the facts expressly stated in the instrument and other[] matters therein suggested which might be disclosed upon prudent inquiry." Chavis, 198 Va. at 382, 94 S.E.2d at 197. Since the 1898 lease and the 1901 deed both referred to a "public" road and landing, a "prudent inquiry" in this case would have led to the conclusion that the County must have acquired an interest in the road and

25

landing by virtue of an instrument such as a deed or through a condemnation proceeding.  Orders entered in county court proceedings in Mathews County were recorded in the County Court Minute Books during the period when the Nelson suit was pending.  Thus, searching for the County's name in the indices to the County Court Minute Books, since general indices were not required until 1919, see former Code § 3394, would have revealed the orders in the Nelson suit that established the landing and road.

Apparently, Marchant found those orders in 1955.  In a report to the County's Board of Supervisors, Marchant discussed the orders and recited the volumes of the County Court Minute Books and page numbers at which those orders were recorded.  He also opined that the orders "appear[ed] to establish definitely that such a road and landing were opened."

Similarly, the plat of the Shaheens' property not only depicted the "Auburn Public Landing" and road on its face but also referenced the Supervisors' Minute Book and the plat book where the 1959 Sinclair plat was recorded. Despite disclaimers regarding the 1959 plat in some of the deeds to the Shaheens' predecessors-in-title, the plat of their property and the references contained therein again

provided constructive notice of the existence of a "public" road and landing.

The scope of a "prudent inquiry" was at issue in Chavis. There, the owner of two tracts of real estate conveyed the tracts to a trustee to secure payment of two promissory notes. 198 Va. at 380, 94 S.E.2d at 196. The owner subsequently conveyed the property to another individual, but that deed did not mention the prior deed of trust. Id. The second owner then sold the property to C. L. Chavis. Id. The deed to Chavis, which was recorded on January 19, 1948, stated that the conveyance was made subject to the lien of the prior deed of trust. Id. at 381, 94 S.E.2d at 196. However, default occurred in the payment of the notes, and the trustee, prior to the conveyance to Chavis, sold the property to two receivers for a bank, who in turn conveyed the property to Louis C. Gibbs. Both the deed to the receivers and the deed to Gibbs were recorded subsequent to the recordation of the deed to Chavis. Id. at 380, 94 S.E.2d at 196.

The issue in the case was whether Chavis or Gibbs had title to the property. Id. at 381, 94 S.E.2d at 197. Chavis contended that the deed from the trustee to the receivers was void as to him because it had not been recorded prior to the time that he had acquired the

property and recorded his deed.  Id. at 381, 94 S.E.2d at 196-97.  Gibbs, on the other hand, claimed that the deed of trust and the recitals in Chavis' deed charged Chavis with sufficient notice to put him on inquiry, which if pursued, would have revealed the foreclosure sale and conveyance by the trustee under the deed of trust.  Id. at 381, 94 S.E.2d at 197.  We agreed with Gibbs.  Id. at 388, 94 S.E.2d at 201.

In our decision, we quoted with approval this statement from 66 C.J.S., *Notice*, § 11, p. 642:

> A person who has sufficient information to lead him to a fact is deemed conversant with it, and a person who has notice of facts which would cause a reasonably prudent person to inquire as to further facts is chargeable with notice of the further facts discoverable by proper inquiry.

Id. at 385, 94 S.E.2d at 199.  We concluded that the recitals in the deed to Chavis put him on inquiry regarding the deed of trust and the rights of the beneficiary.  Id. "If reasonable and prudent inquiry had been made and full answers obtained, [Chavis] would have discovered that because of default in the payment of the notes, the property had been sold in accordance with the provisions of the deed of trust." Id. at 387, 94 S.E.2d at 201.  Thus, we held that Chavis was not a purchaser without notice and did not take title to the property.  Id. at 388, 94 S.E.2d

at 201.  In Chavis, a prudent inquiry was not limited to facts disclosed solely within the four corners of the recorded instruments.  The fact that the deed of trust was of record and remained outstanding when Chavis purchased the property placed on him a duty to inquire further about the status of the notes secured by the deed of trust.

Our decision today is consistent with an analogous case decided by this Court many years ago.  In Whitlock v. Johnson, 87 Va. 323, 330, 12 S.E. 614, 616 (1891), the question we considered was whether the defendants were innocent purchasers for value, with notice.  Several deeds in Whitlock's chain of title contained a reference to "a plat of the sub-division of E. F. Peticolas's estate, which plat is filed with the report of Commissioner W. F. Watson, in the clerk's office of the county court of Henrico, with the causes ended October, 1861."  Id. at 330, 12 S.E. at 617.  The referenced plat, which was only filed with the commissioner's report and not in the deed books, had the name of "Dr. C. P. Johnson" on lot No. 25 and the word "do" on each of the other lots in question.  Id. at 331, 12 S.E. at 617.  The deed to Whitlock did not, however, mention the plat, but it did refer to the other deeds in Whitlock's chain of title.  Id. at 330-31, 12 S.E. at 617.

We concluded that Whitlock was put on inquiry as to the commissioner's report which conclusively showed that Johnson purchased the lots in question. Id. at 331, 12 S.E. at 617. Although the cause in which the report and plat were filed was not specifically named in the deeds, it was sufficient that the deeds contained the term of court in which the cause was ended and referred to the plat, and that the plat named the cause in which the property was sold. Id. Thus, we held that Whitlock had constructive notice of the outstanding title of Johnson to the lots in question. Id. at 332, 12 S.E. at 617.

Similarly, the instruments in the Shaheens' chain of title did not mention the Nelson suit, but those instruments provided sufficient information to put the Shaheens on constructive notice about the existence of a public landing and road. And, as we have already stated, a "prudent inquiry" would have led to the Nelson suit orders recorded in the County Court Minute Books.

Thus, we conclude that the circuit court did not err in "affirming" the existence of an easement for the benefit of the public in the Auburn landing and road. The Shaheens were not innocent purchasers without constructive notice of the County's interest in the landing and road.

C. DESCRIPTION OF LANDING

In their fourth assignment of error, the Shaheens contend that the description of the Auburn landing as set forth in the Nelson suit was so vague as to be invalid or void, thereby causing the County's claim to the landing to fail. The circuit court, in its letter opinion, discussed the difficulties with the description of the landing and stated that "[t]he precise location of the road and landing cannot be established by review of the Nelson suit." However, the court ultimately adopted the description of the landing as shown on the 1959 Sinclair plat.

Irrespective of any inadequacies in the description of the landing when it was established in the Nelson suit or whether the description was sufficient to give notice under the registry laws as to enable a subsequent purchaser to determine where the landing was situated, see Merritt v. Bunting, 107 Va. 174, 178, 57 S.E. 567, 568 (1907), we conclude that the Shaheens cannot now dispute the description adopted by the circuit court. The plat depicting the Shaheens' property delineated the "Auburn Public Landing" and specifically referred to the plat book where the 1959 Sinclair plat was recorded in the County's land records. The Shaheens implicitly agreed to the accuracy of the 1959 Sinclair description of the public landing by accepting their own deed. See Shooting Point,

31

L.L.C. v. Wescoat, 265 Va. 256, 264, 576 S.E.2d 497, 501 (2003); Johnson v. Powhatan Mining Co., Inc., 127 Va. 352, 364, 103 S.E. 703, 707 (1920). Thus, we find no merit in this assignment of error.

## D. BURDEN OF PROOF

Finally, the Shaheens argue that the County had the burden of proof and failed to carry that burden. We do not agree. For the reasons already stated, we conclude that the County established, by clear and convincing evidence, an easement in the Auburn landing and road for the benefit of the public.

## III. CONCLUSION

With regard to each of the assignments of error raised by the Shaheens, we find no error in the judgment of the circuit court. Thus, we will affirm that judgment.

Affirmed.

32