PRESENT:  Hassell, C.J., Keenan, Kinser, Lemons, and Agee, JJ.,
Carrico, S.J., and Whiting, R.J.

JOHN W. RICHARDSON,
SUBSTITUTE GUARDIAN FOR THE ESTATE OF
CHRISTINA ELIZABETH BROWN, A MINOR

v.  Record No. 030390   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                            January 16, 2004
AMRESCO RESIDENTIAL
MORTGAGE CORPORATION, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Frederick B. Lowe, Judge


In this appeal, we consider whether the chancellor erred in
ruling that certain mortgagees were entitled to protections
afforded third parties under the Uniform Transfers to Minors
Act, as codified in Kentucky and Virginia (the Act).  Kentucky
Rev. Stat. Ann. §§ 385.012 through 385.252 and Virginia Code
§§ 31-37 through -59.  This issue arose from the mortgagees'
asserted right to enforce liens secured by real property that a
custodian had transferred from a custodial estate to herself by
a quitclaim deed.  We also consider whether the chancellor erred
in holding that the quitclaim deed was valid, notwithstanding an
attack on the deed by the beneficiary of the custodial estate.

The relevant facts are not in dispute.  In 1990, Christina
E. Brown, a one-year-old resident of the Commonwealth of
Kentucky, received about $700,000 from the settlement of a
wrongful death action brought in Kentucky by the administrator
of her father's estate.  Christina's natural mother, Dana R.

Brown (Brown), was appointed guardian of Christina's estate by the District Court of Shelby County, Kentucky (the Kentucky court). The Kentucky court prohibited Brown from "invading or otherwise using the principal or personal estate of [Christina] unless approved" by order of that court.

In August 1996, Brown moved her residence from Kentucky to the City of Virginia Beach, and brought Christina with her. Brown used a portion of the estate's assets to purchase certain real property in Virginia Beach, which was conveyed by deed to Brown in her capacity as the "Custodian for Christina Elizabeth Brown under the Kentucky Uniform Transfers to Minors Act." The deed was recorded in the clerk's office of the Circuit Court for the City of Virginia Beach (the circuit court).

In March 1997, Brown, in her capacity as Christina's custodian, conveyed the property to herself, individually, by a "quitclaim" deed that was recorded in the circuit court clerk's office on April 3, 1997. Brown conveyed the property to herself without consideration in order to use it as security for a personal loan. The parties have stipulated that this quitclaim deed is part of the "chain of title" to the property.

Brown obtained a personal loan in the amount of $139,750 from AMRESCO Residential Mortgage Corporation (AMRESCO). The loan was secured by a deed of trust on the property dated April 15, 1997.

Before executing the loan, AMRESCO retained an attorney, Charles D. Pittman, Jr., to determine whether Brown held valid title to the property.  A title search revealed both the deed in which Brown acquired the property in her custodial capacity (the original deed) and the quitclaim deed in which she conveyed the estate property to herself individually.  However, Pittman failed to advise AMRESCO regarding either deed.

In June 1997, the Kentucky court removed Brown as the guardian of Christina's estate based on her failure to make a required appearance in that court and her failure to file with the court certain periodic and final settlement reports.  In July 1997, the circuit court appointed Brown as guardian of Christina's estate.[1]

In January 1998, Brown obtained a personal loan in the amount of $35,000 from CENIT Bank, FSB, formerly known as Princess Anne Bank (CENIT).[2]  The loan was secured by a deed of trust on the property dated January 5, 1998.

Before executing the loan, CENIT retained an attorney, Henry C. Frenck, III, to conduct a title examination of the

---

[1] The record does not show that the circuit court was informed of Brown's removal as guardian by the Kentucky court at the time the circuit court entered its order.

[2] Since the filing of the present case, CENIT has merged with SouthTrust Bank, which has become the successor in interest to CENIT in its deed of trust and in the present proceedings. Upon the parties' agreement in this appeal, we have substituted

property.  His title search revealed the existence of both the original deed and the quitclaim deed.  Frenck advised CENIT that Brown owned the property in her individual capacity.

In October 1998, Victor W. Brizendine, III, Christina's guardian ad litem, filed a petition in the circuit court seeking to remove Brown as the guardian of Christina's estate.  In December 1998, the chancellor "enjoined and restrained" Brown from "selling, destroying, giving away, disposing of, changing, adjusting or causing to be diminished in value any assets of the guardianship."

In March 1999, despite the chancellor's order, Brown entered into a contract to sell the property to Carter H. and Lynn M. Coupland (the Couplands).  In June 1999, the chancellor entered a decree prohibiting Brown from selling or transferring the property.  In July 1999, the chancellor removed Brown as the guardian of Christina's estate and appointed John W. Richardson as the estate's substitute guardian.

Richardson filed an "Amended Bill of Complaint to Quiet Title to Real Estate" against various parties, including AMRESCO and CENIT (collectively, the mortgagees).[3]  Richardson asked the

---

SouthTrust Bank in place of CENIT Bank, FSB, as the proper party of record in this appeal.

[3] AMRESCO filed a third-party bill of complaint against its attorney, Charles D. Pittman, Jr., and Charles D. Pittman, P.C., requesting judgment against them for any damages suffered by AMRESCO in the suit filed against it by Richardson.  This suit

chancellor, among other things, to declare that the quitclaim deed was "null and void" and to declare that Christina's estate owned the property "free and clear of all liens and encumbrances." The chancellor, however, ordered that the property be sold to the Couplands under the terms of their sales contract with Brown, and further directed that all proceeds from the sale be placed in trust pending the outcome of the present litigation.

Richardson filed a motion for summary judgment in which he argued that the quitclaim deed was void under Kentucky law, and voidable under Virginia law, and that the mortgagees had actual and constructive notice of Brown's "fiduciary self-dealing." In response, the mortgagees argued that they were entitled to rely on the quitclaim deed under the Act's "safe harbor" provision, as codified in Kentucky Rev. Stat. Ann. § 385.162 and Virginia Code § 31-52.

---

was consolidated with Richardson's suit, and the chancellor ultimately entered final judgment in favor of all the original respondents, including Pittman and Charles D. Pittman, P.C., and Henry C. Frenck, III, upon resolving the allegations in Richardson's complaint in favor of the mortgagees. On appeal, Pittman and Charles D. Pittman, P.C., have filed a joint brief with AMRESCO. Therefore, in stating the mortgagees' arguments in this opinion, those arguments also represent the position of Pittman and Charles D. Pittman, P.C., in this appeal. Cenit also filed a third-party bill of complaint against its attorney, Henry C. Frenck, III, requesting judgment against him for any damages suffered by Cenit in the suit filed against it by Richardson. However, Frenck has not participated in the present appeal.

Kentucky Rev. Stat. Ann. § 385.162, which contains language substantively identical to that found in Virginia Code § 31-52, provides, in relevant part:

A third person in good faith and without court order may act on the instructions of or otherwise deal with any person purporting to make a transfer or purporting to act in the capacity of a custodian and, in the absence of knowledge, is not responsible for determining:

(1)  The validity of the purported custodian's designation;

(2)  The propriety of, or the authority . . . for, any act of the purported custodian;

(3)  The validity or propriety . . . of any instrument or instructions executed or given either by the person purporting to make a transfer or by the purported custodian; or

(4)  The propriety of the application of any property of the minor delivered to the purported custodian.

The chancellor denied Richardson's summary judgment motion and held that the mortgagees were entitled to the protections afforded third parties under the Act.  The chancellor stated that while the existence of the quitclaim deed should have "raised a red flag," the Act was "sufficient to warrant the court to deny" Richardson's motion.

After conducting an evidentiary hearing, the chancellor held that Brown's conveyance of the property to herself in her individual capacity was a valid transfer.  The Chancellor further held that the mortgagees' deeds of trust were valid and

6

enforceable liens against the proceeds of the sale of the property.  Richardson appeals.

Richardson asserts that the chancellor erred in holding that the quitclaim deed was valid because under Virginia law, a deed in which a fiduciary transfers property to herself, individually, is voidable and must be set aside at the beneficiary's request.  The mortgagees do not dispute this basic principle of law, but argue that the "safe harbor" provisions of the Act and the mortgagees' alleged status as bona fide purchasers protect their interest in the property from Christina's attack on the quitclaim deed.  We disagree with the mortgagees' arguments.

We address the validity of the quitclaim deed under established principles of Virginia law, which govern this issue because the property conveyed by that deed is located in this Commonwealth.  Ware v. Crowell, 251 Va. 116, 119, 465 S.E.2d 809, 811 (1996); Seaton v. Seaton, 184 Va. 180, 183, 34 S.E.2d 236, 237 (1945); Mort v. Jones, 105 Va. 668, 671-72, 51 S.E. 220, 221 (1905).  With regard to transfers of property by a fiduciary, we have stated:

> [I]t is a settled principle of equity that trustees and all persons acting in a confidential character with respect to [a] subject of sale are disqualified from purchasing the property for themselves.  The characters of buyer and seller are incompatible, and cannot be safely exercised by the same person.  The validity of a sale in such case does not depend upon

7

> its fairness, but the sale is voidable, and when
> attacked, must be set aside, although the price was
> fair, or the best to be had, and the motive pure.

Smith v. Credico Indus. Loan Co., 234 Va. 514, 516, 362 S.E.2d 735, 736 (1987) (quoting Smith v. Miller, 98 Va. 535, 541, 37 S.E. 10, 11-12 (1900)); accord Whitlow v. Mountain Trust Bank, 215 Va. 149, 152, 207 S.E.2d 837, 840 (1974); Owens v. Owens, 196 Va. 966, 973, 86 S.E.2d 181, 185-86 (1955).  Such a sale by a person acting as a fiduciary constitutes a constructive fraud, and must be set aside when attacked by the fiduciary's beneficiary in order to uphold the fiduciary relationship that existed at the time of the sale.  Whitlow, 215 Va. at 152, 207 S.E.2d at 840.

Applying these principles, we hold that Christina's attack on the quitclaim deed requires that the deed be set aside, and that the chancellor erred in reaching a contrary conclusion. Therefore, we will now consider whether the mortgagees' asserted interest in the property is protected under the "safe harbor" provisions of the Act or by the mortgagees' alleged status as bona fide purchasers.

Richardson contends that the Act does not protect the mortgagees' interest in the property because the Act shields only third parties who "act on the instructions of or otherwise deal with any person purporting to . . . act in the capacity of a custodian."  Kentucky Rev. Stat. Ann. § 385.162; see also

8

Virginia Code § 31-52. He argues that because the mortgagees dealt with Brown in her individual capacity seeking personal loans, rather than in her capacity as custodian for Christina's estate, the mortgagees did not "deal with" Brown within the meaning of the Act. Richardson also argues that the mortgagees do not qualify as bona fide purchasers because both had constructive knowledge of Brown's fiduciary self-dealing.

In response, the mortgagees argue that they "dealt with" Brown in her capacity as the custodian of Christina's estate, within the meaning of the Act, when they relied on the quitclaim deed in the chain of title that Brown executed in her custodial capacity. Thus, they assert that their interest in the property is protected under the Act's "safe harbor" provisions because they lacked knowledge that Brown's acts were unauthorized or improper. We disagree with the mortgagees' arguments.

As we have stated, the Kentucky and Virginia statutes adopting the Act's "safe harbor" provisions are substantively identical. We also note that there is no jurisprudence in either jurisdiction interpreting these unique statutory provisions. Thus, we need not decide whether the disputed provisions of the Act should be interpreted under the Kentucky statute or the Virginia statute, and we focus our inquiry on the Act's language that is contested by the parties.

9

We hold that the language at issue is unambiguous and, therefore, we examine this language in accordance with its plain meaning.  See Woods v. Mendez, 265 Va. 68, 74-75, 574 S.E.2d 263, 266 (2003); Mozley v. Prestwould Bd. of Dirs., 264 Va. 549, 554, 570 S.E.2d 817, 820 (2002); Industrial Dev. Auth. v. Board of Supervisors, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002). We conclude that because the Act's plain language encompasses only third parties who "deal with" a "person purporting to make a transfer or purporting to act in the capacity of a custodian," such protections do not extend to those who merely rely on various acts of a custodian.  See Kentucky Rev. Stat. Ann. § 385.162; Virginia Code § 31-52.

Because Brown's conveyance to herself by the quitclaim deed was not a "transfer" as defined by the Act,[4] the mortgagees can obtain protection under the Act only to the extent that they can show that they dealt with Brown when she was "purporting to act in the capacity of a custodian."  See Kentucky Rev. Stat. Ann. § 385.162; Virginia Code § 31-52.  The mortgagees, however, did not deal with Brown in her capacity as a custodian, but only in her individual capacity to lend her money for her personal use. Therefore, the protections afforded by the Act do not apply to the mortgagees' transactions with Brown.

We next consider whether the mortgagees were bona fide purchasers of the property, thereby entitling them to retain their security interest in the property notwithstanding Christina's attack on the quitclaim deed. Although the chancellor did not reach this issue in his analysis of the case, we decide the issue here based on our conclusion that it can be resolved on the present record as a matter of law.[5]

A mortgagee may assert the status of a bona fide purchaser to the extent of the mortgagee's interest in the real property. See Puckett v. Campbell, 151 Va. 213, 216, 144 S.E. 434, 435 (1928); Gordon v. Rixey, 76 Va. 694, 698 (1882); Cammack v. Soran, 71 Va. (30 Gratt.) 292, 295 (1878); Garrard Glenn, Mortgages, Deeds of Trust, and Other Security Devices as to Land § 32, at 208, § 378, at 1541-42 (1943). However, to attain the status of a bona fide purchaser, a mortgagee must establish that it purchased its interest in the property for value, without actual or constructive notice of the latent equity of another. See Tauber v. Commonwealth, 263 Va. 520, 538, 562 S.E.2d 118, 127 (2002); Richmond v. Hall, 251 Va. 151, 157, 466 S.E.2d 103,

---

[4] A "transfer" is defined as a transaction that creates custodial property under the provisions of the Act. Kentucky Rev. Stat. Ann. § 385.012; Virginia Code § 31-37.

[5] Our resolution of this issue is based on the common law and, therefore, does not address the meaning of the phrase "in the absence of knowledge," as found in the Act. See Kentucky Rev. Stat. Ann. § 385.162 and Virginia Code § 31-52.

106 (1996); Guss v. Sydney Realty Corp., 204 Va. 65, 72, 129 S.E.2d 43, 49 (1963).

"The recordation of an instrument gives constructive notice of all the facts expressly stated in the instrument and other[] matters therein suggested which might be disclosed upon prudent inquiry." Shaheen v. County of Mathews, 265 Va. 462, 478, 579 S.E.2d 162, 172 (2003) (quoting Chavis v. Gibbs, 198 Va. 379, 382, 94 S.E.2d 195, 197 (1956)). Thus, a purchaser of real property has constructive notice not only of the facts appearing on the face of recorded documents in the chain of title, but also of such other facts of which the purchaser is placed on inquiry based on those recorded instruments. Shaheen, 265 Va. at 477, 579 S.E.2d at 171-72; Allen v. Green, 229 Va. 588, 594, 331 S.E.2d 472, 476 (1985); Kiser v. Clinchfield Coal Corp., 200 Va. 517, 523, 106 S.E.2d 601, 606 (1959); Chavis, 198 Va. at 382-83, 94 S.E.2d at 197-98.

In the present case, the recorded instruments in the chain of title to the property placed the mortgagees under a duty of inquiry. On its face, Brown's transfer of the property by quitclaim deed to herself raised a question of fiduciary self-dealing, and further inquiry concerning the conveyance would have yielded additional facts revealing the unauthorized nature of the transfer. Thus, we conclude that the mortgagees had notice of the questionable validity of Brown's transfer of the

12

property to herself.  This notice refutes their claim that they were bona fide purchasers and, therefore, their interest in the property is defeated by Christina's successful attack on the quitclaim deed.  See Tauber, 263 Va. at 538, 562 S.E.2d at 127; Richmond, 251 Va. at 157, 466 S.E.2d at 106; Guss, 204 Va. at 72, 129 S.E.2d at 49.

Accordingly, we conclude that the mortgagees do not have valid liens on the proceeds now held in trust from the sale of the property, and that the Estate of Christina Elizabeth Brown is entitled to those proceeds free and clear of the mortgagees' claims.  We will remand the case to the chancellor for entry of an order to be recorded among the land records voiding the quitclaim deed and the mortgagees' deeds of trust.

For these reasons, we will reverse the chancellor's judgment and remand the case for entry and recordation of the above-described order.

Reversed, final judgment, and remanded.