## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Jay-Ton Construction
Co., Inc.

v.

Bowen Construction
Services, Inc.

August 13, 2003

Case No. (Law) 02-1800

BY JUDGE MARK S. DAVIS

This matter is before the Court on defendant's Motion for Summary Judgment, plaintiff's Motion to File Reply Pursuant to Rule 3:12, plaintiff's Motion to Strike Counterclaim, plaintiff's Motion for Nonsuit, and various related subsidiary matters. The factual and procedural background of these motions, discussion of the issues, and conclusion are set forth below.

## I. *Factual and Procedural Background*

Plaintiff, Jay-Ton Construction Co., Inc. (hereafter "Jay-Ton"), filed its Motion for Judgment on May 22, 2002, alleging breach of a construction contract by the defendant, Bowen Construction Services, Inc. (hereafter "Bowen"). The Motion for Judgment alleges that a third party, Portsmouth

Associates, L.L.C. (hereafter "Portsmouth Associates") "contracted with Bowen Construction for Bowen Construction to furnish labor, materials, and related services for improvements to, at, and for" the construction of a K-Mart shopping center in Portsmouth. The contract between Portsmouth Associates and Bowen is the "prime contract." Bowen in turn contracted with Jay-Ton to perform a portion of the work required on Bowen's prime contract. The contract between Bowen and Jay-Ton is the "subcontract." Jay-Ton alleges that it performed its obligations under the subcontract until such time as the work on the prime contract was stopped due to the bankruptcy filing of K-Mart. Alleging that Bowen breached its express and implied contractual obligations, Jay-Ton seeks payment of the subcontract balance of $96,050.00, pre-judgment and post-judgment interest until paid, and attorney's fees. Jay-Ton attached to the Motion for Judgment the subcontract, identified on its face as The American Institute of Architects, AIA Document A401, Subcontract (Standard Form of Agreement Between Contractor and Subcontractor, 1978 Edition), as modified in certain respects, and reflecting a date entered into of December 12, 2001.

Pursuant to a Consent Decree extending defendant's response time, Bowen filed a Verified Grounds of Defense and a Demurrer on June 24, 2002. Bowen's Verified Grounds of Defense admitted that Portsmouth Associates and Bowen entered into the prime contract, but denied breaching the contract with Jay-Ton and owing any money. The Verified Grounds of Defense also contains numerous paragraphs under the heading "Affirmative Defenses." Paragraph "17" under the affirmative defenses heading reads as follows: "The owner of the project has not paid Bowen for the amounts sought by Jay-Ton in the Motion. Jay-Ton's claim is barred by the terms of article 5.2 of the Subcontract, and a reply is expressly requested."

On July 23, 2002, Bowen filed a Motion for Leave to File Counterclaim and, pursuant to a Consent Decree entered on August 30, 2002, the Court granted leave to Bowen to file its counterclaim. On September 19, 2002, Bowen filed its Counterclaim against Jay-Ton. The counterclaim alleges that the subcontract between Jay-Ton and Bowen requires any request for payment by Jay-Ton to state the percentage of work completed under the subcontract and the amount due. It further alleges that Jay-Ton submitted a request for payment to Bowen on December 19, 2001, for $101,700.00, and that another request was submitted on January 21, 2002, for $76,275.00. The counterclaim also states that K-Mart Corporation filed for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code on or about January 22, 2002. In Count I of the

Counterclaim, Bowen alleges a breach of contract on the grounds that the requests for payment submitted by Jay-Ton overstate the percentage of work completed and the amount owed to Jay-Ton, thereby causing damage in the amount of $82,733.00. In Count II of the Counterclaim, Bowen seeks a setoff of the $82,733.00 against the $96,050.00 claimed by Jay-Ton, as well as additionally-discovered overstatements of completed work by Jay-Ton.

On September 23, 2002, Bowen filed a Motion for Summary Judgment and Memorandum of Law in support thereof, pursuant to Rule 3:18 of the Rules of the Virginia Supreme Court. Bowen alleges in its memorandum that the "[s]ubcontract expressly provides in its Article 5.2 that, as a *condition precedent* to any payment by Bowen to Jay-Ton, the Owner (as defined in the Subcontract) must first pay Bowen under the prime contract between the Owner and Bowen," and that "Jay-Ton did not plead that the Owner has paid Bowen, as required under the Subcontract before payment is owed to Jay-Ton." Bowen also avers that it has not been paid "for the amounts claimed by Jay-Ton due to the work stoppage caused by K-Mart's bankruptcy." Bowen further states that, pursuant to Rule 3:12 of the Rules of the Supreme Court of Virginia, it "set up a new matter in the Grounds of Defense" when it stated in paragraph 17 of its Grounds of Defense that it had not been paid by the Owner for the amounts sought by Jay-Ton.

Rule 3:12 of the Rules of the Supreme Court of Virginia provides as follows:

> If a plea, motion, or affirmative defense sets up a new matter and contains words expressly requesting a reply, the adverse party shall within twenty-one days file a reply admitting or denying such new matter. If it does not contain such words, the allegation of new matter shall be taken as denied or avoided without further pleading. All allegations contained in a reply shall be taken as denied or avoided without further pleading.

Bowen asserts that Rule 3:12 requires that Jay-Ton file its reply to this new matter and affirmative defense within twenty-one days from service of the Grounds of Defense. Bowen argues that Jay-Ton failed to file a reply within the required period of time and asserts that the "affirmative defense pleaded by Bowen in paragraph 17 of the Grounds of Defense is accordingly 'deemed as admitted' under Rule 1:4(e) of the Rules." Rule 1:4(e) provides, in pertinent part, that: "[a]n allegation of fact in a pleading that is not denied by

the adverse party's pleading, when the adverse party is required by these Rules to file such pleading, is deemed to be admitted." Citing numerous cases for the proposition that Rules 3:12 and 1:4(e), when read in combination, require entry of summary judgment, Bowen contends that "Jay-Ton has admitted or 'de facto agreed' that the Owner had not paid Bowen for the amounts sought by Jay-Ton, and that Jay-Ton's claim for breach of the Subcontract is barred by article 5.2 of the Subcontract." Bowen further asserts that entry of summary judgment does not mean Jay-Ton is not entitled to payment, just that "payment from the Owner to Bowen is a *condition precedent* to Bowen's obligation to pay Jay-Ton."

On October 3, 2002, Jay-Ton filed a Reply to Motion for Summary Judgment and Motion to File Reply Pursuant to Rule 3:12, Motion to Strike Counterclaim, and a Grounds of Defense to Counterclaim. In the Reply to Motion for Summary Judgment, Jay-Ton contends that after Bowen received the Motion for Judgment its counsel contacted Jay-Ton's counsel by telephone to request an extension of time to file responsive pleadings, which extension was granted, and the above-referenced Consent Decree was entered. Jay-Ton further contends that, during that conversation, counsel for the respective parties discussed the issue of whether Jay-Ton was entitled to payment prior to Bowen's receiving payment from the owner. Jay-Ton also asserts that during that conversation its counsel explained its many defenses to the pay-when-paid provision, including an argument that Bowen and the Owner of the project are controlled by the same individuals, thereby undercutting the pay-when-paid provision of the subcontract. Jay-Ton further asserts that it explained its position that the "prevention doctrine" prohibits a prime contractor from relying on a pay-when-paid clause to deny payment to a subcontractor if the prime contractor contributed to the non-occurrence of the condition precedent. The suggestion is apparently that, even though Jay-Ton did not timely respond to Bowen's request for a reply to paragraph 17 of its Grounds of Defense, Bowen was not surprised and/or prejudiced by Jay-Ton's defenses to the pay-when-paid contract language because they had been discussed informally. Bowen does not deny that such a telephone conversation took place.

Jay-Ton also argues in its Reply that the contents of paragraph 17 of Bowen's Grounds of Defense, which specifically requests a reply pursuant to Rule 3:12, are substantially similar to the defenses set up by Bowen in paragraphs 15 and 16 of its Grounds of Defense, and that since no request for reply is made in those paragraphs, Bowen is precluded from arguing that Jay-Ton's failure to respond to paragraph 17 constitutes an admission of its

contents. Jay-Ton also argues in its Reply that on September 13, 2002, nearly two weeks prior to the filing of Bowen's Motion for Summary Judgment, Jay-Ton filed answers to interrogatories stating its belief that the pay-when-paid contract provision did not prohibit it from recovering on its subcontract, though it did not go into detail regarding defensive theories.

Jay-Ton filed a Motion to File a Reply, with its October 3, 2002, Reply to Motion for Summary Judgment, seeking leave of Court to reply to paragraph 17 of the Grounds of Defense, should the Court determine that such a reply was necessary. In support of its motion, Jay-Ton asserts that Bowen will not be prejudiced by the filing of such a reply since Jay-Ton had previously provided a detailed explanation as to why it did not believe article 5.2 of the Subcontract precluded its claim for payment. Jay-Ton attached to its motion a Reply Pursuant to Rule 3:12 and asked that it be lodged with the Court pending a ruling on its motion.

In the Motion to Strike Counterclaim filed by Jay-Ton on October 3, 2002, it alleges that the counterclaim is "nothing more than a duplicitous re-statement of Bowen's allegations of breach of the Subcontract and set-off previously pleaded in the Verified Grounds of Defense." In the Grounds of Defense to Counterclaim filed that same day, Jay-Ton denied that it submitted inaccurate payment requests and further stated that the "[o]wner of the Project elected to stop work on the Project despite having financing in place to complete the Project."

Bowen filed its Objections to Plaintiff's Motion to Strike Counterclaim on November 20, 2002. Bowen asserts that a Motion to Strike Counterclaim "is a defective pleading not recognized under the Rules." Bowen also asserts that, even if the motion were not defective, it should be denied because Jay-Ton " 'front loaded' its invoices and overbilled Bowen by billing Bowen for work Jay-Ton was *scheduled to perform* under the Subcontract, but *had not yet performed*." Bowen further argues in its Objection that "Jay-Ton's motion appears to be driven by some interest of Jay-Ton in nonsuiting the Motion for Judgment" and that "[i]t seeks the Court's aid in doing so because it cannot nonsuit by right with a counterclaim pending."

On March 10, 2003, Bowen filed a Notice of Hearing for May 9, 2003, indicating it would move the Court to grant its Motion for Summary Judgment and Supplemental Motion for Summary Judgment. On March 17, 2003, Jay-Ton filed a Notice that it would move the Court on May 9, 2003, to grant its Motion to File Rule 3:12 Reply. Since all outstanding motions were argued to some extent at the May 9, 2003, hearing, the Court will exercise its discretion

to consider all outstanding motions, even though all such motions were not noticed for the May 9, 2003, hearing.

On May 5, 2003, Bowen filed its Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion to File Reply Brief. Bowen argues that it raised a "new matter" within the contemplation of Rule 3:12, thereby requiring a response from Jay-Ton, because its paragraph 17 of the Grounds of Defense provides in the first sentence that "[t]he owner of the project has not paid Bowen for the amounts sought by Jay-Ton in the Motion." Bowen asserts that this fact was not pleaded by Jay-Ton in its Motion for Judgment and it is therefore "new," requiring a response pursuant to Rule 3:12. Bowen also alleges that the telephone call referenced by Jay-Ton does not meet the requirement of Rule 3:12 to file a reply to any new matter that is pleaded and on which a reply is requested. Bowen points out that by the time Jay-Ton filed its interrogatory answer (contesting the right to payment) on September 13, 2002, two months had passed since the date Jay-Ton was required to file its Rule 3:12 reply.

Jay-Ton filed a Supplemental Brief in Opposition to Motion for Summary Judgment on May 6, 2003. In addition to points previously raised, Jay-Ton also contends that, if the Court denies its request to file a Rule 3:12 reply pursuant to Rule 1:9, then Rule 1:4(e) only applies to admission of facts and the operative language at issue in paragraph 17 states a legal conclusion. Jay-Ton also notes that there is no prejudice to Bowen in allowing Jay-Ton to file a Rule 3:12 reply; that Jay-Ton has proceeded in good faith throughout the case by signing an Order granting Bowen an extension of time to file a Grounds of Defense and by signing an Order granting Bowen leave to file a Counterclaim even though the twenty-one day period for filing a counterclaim had expired before Bowen made the request; and, that the parties were not at issue when Bowen filed its summary judgment motion as Jay-Ton's reply to Bowen's Counterclaim was not due until after the Motion for Summary Judgment was filed.

Jay-Ton further noted that a case between the exact same parties is pending in the Hampton Circuit Court, styled *Jay-Ton Construction Co. v. Bowen Construction*, Law No. CL02-468, and stated that case has the same procedural posture as this case. Jay-Ton notes that the Hampton Circuit Court, by letter-opinion of November 22, 2002,[1] granted Jay-Ton's Motion to File a Late Rule 3:12 Reply, finding that paragraph 17 of the Grounds of Defense set

---

[1] This opinion is printed below at page 530.

up a "new matter," but that an appropriate exercise of discretion dictates that the plaintiff be allowed to file a late reply pursuant to Rule 1:9. That Opinion, which was provided to this Court, reveals that the Hampton Circuit Court then denied Bowen's Motion for Summary Judgment. Jay-Ton also argues that the standard recently adopted by the Virginia Supreme Court in *Shaheen v. County of Mathews*, 265 Va. 462, 579 S.E.2d 162 (2003), to determine when to allow withdrawal or amendment of admissions under Rule 4:11, should be applied to these facts.

The parties appeared by counsel on May 9, 2003, to argue their pending motions. At the conclusion of arguments, Jay-Ton moved the Court for a nonsuit. Pursuant to that request, Bowen was directed to file its Memorandum in Response to Plaintiff's Supplemental Brief and in Support of its Motion for Summary Judgment within twenty-one days; Jay-Ton was directed to file its Brief in Support of Motion for Nonsuit within twenty-one days; and Bowen was directed to file a Memorandum in Opposition to Plaintiff's Motion for Nonsuit within fourteen days of receiving plaintiff's brief in support thereof.

On May 30, 2003, Bowen filed Defendant's Memorandum in Response to Plaintiff's Supplemental Brief and in Support of its Motion for Summary Judgment. In that Memorandum, Bowen reiterated that the standard to be used in determining whether plaintiff should be allowed to file a late reply is not the "two-part test" set forth in Shaheen, but the excusable neglect standard which it argues is set out in *Emrich v. Emrich*, 9 Va. App. 288, 387 S.E.2d 274 (1989).

Jay-Ton filed its Brief in Support of Motion for Nonsuit on May 30, 2003, arguing that the counterclaim should be struck as it is nothing more than a duplicitous re-statement of Bowen's defenses of breach of subcontract and set-off pleaded in the Grounds of Defense. Jay-Ton suggests that Bowen filed the counterclaim for the "sole effect of setting up a barrier to Jay-Ton's statutory right to nonsuit," noting that Bowen's summary judgment motion (predicated upon the absence of Jay-Ton's Rule 3:12 response) was filed only four days after the counterclaim. Jay-Ton describes this "set up" as a "manipulation of Jay-Ton's rights" for an "improper purpose." Jay-Ton also argues that its nonsuit motion should be granted because the counterclaim is capable of remaining pending for independent adjudication pursuant to § 8.01-380 of the Code of Virginia. Jay-Ton states that the counterclaim alleges Jay-Ton "over-billed for its work, is owed nothing from Bowen, and in fact owes Bowen $82,733.00. . . ."

Jay-Ton's Brief in Support of Motion for Nonsuit was delivered to the Court on May 30, 2003, under cover of a nine-page letter bearing the same

date and containing legal argument on many of the issues argued at the May 9, 2003, hearing. The Court received, on June 16, 2003, Bowen's Objections to Plaintiff's Second Supplemental Brief in Opposition to Motion for Summary Judgment, in which Bowen observes that the Court did not grant Jay-Ton leave to file a supplemental brief in opposition to Bowen's motion for summary judgment

On June 16, 2003, Bowen filed its Memorandum of Law in Support of Defendant's Objections to Plaintiff's Motion to Strike Counterclaim and in Opposition to Plaintiff's Motion for Nonsuit, arguing that Jay-Ton's "duplicity" objection misapplied the law since there is no authority supporting the proposition that it is "duplicitous" for a counterclaim to restate arguments made in a grounds of defense. Bowen also argues that Jay-Ton's request for a nonsuit should be denied because Bowen's counterclaim cannot remain pending for independent adjudication since an adjudication of the counterclaim is an adjudication of the motion for judgment.

The Court orders the filing of the briefs in this matter since they contain factual recitations relied upon by the Court. The essential facts, as reflected in those briefs, are not in dispute.

## II. *Discussion*

The Court must first determine whether to grant Jay-Ton's Motion to Strike Counterclaim, since Jay-Ton would be free to seek a nonsuit if no counterclaim was pending, and such a nonsuit would obviate the need to address the remaining issues.

### A. *Motion to Strike Counterclaim*

The Motion to Strike Counterclaim is based upon Jay-Ton's argument that the Bowen Counterclaim is duplicitous of the Bowen Verified Grounds of Defense. Bowen challenges the propriety of filing a motion to strike, as well as the substance of the duplicity argument.

The Virginia Supreme Court has recognized that a "motion to reject or strike out can be used to obviate objections to pleadings, such as duplicity and the like, which cannot now be raised by demurrer. . . ." *Chesapeake & O. R. Co. v. Rison*, 99 Va. 18, 28, 37 S.E. 320, 323 (1900); Michie's Jurisprudence, *Demurrers*, § 16. Accordingly, Jay-Ton's Motion to Strike Counterclaim is a

proper vehicle by which to raise a duplicity objection and the Court will consider such objection.

B. *Duplicity*

Jay-Ton argues that Bowen's counterclaim is duplicitous of Bowen's Ground of Defense. *Black's Law Dictionary* defines a "duplicitous" pleading as one "which joins in one and the same count different grounds of action of different nature, or of the same nature, to enforce a single right to recovery, or which is based on different theories of the defendant's liability." *Black's Law Dictionary* 452 (5th ed. 1979). That definition also indicates that "[s]uch duplicity was not permitted in common law pleading, but is allowed under [Federal] Rule of Civil Procedure 8(e)." The separate definition for "duplicity" provides that it is the "technical fault in common law pleading of uniting two or more causes of action in one count in a writ, or two or more grounds of defense in one plea. . . ." *Black's Law Dictionary, supra,* at 452.

The "fault" of duplicity in a civil context was addressed by the Virginia Supreme Court in the matter of *Felvey v. Shaffer*, 186 Va. 419, 422, 42 S.E.2d 860, 862 (1947), in which the defendant contended that the "notice of motion for judgment [was] fatally defective for duplicity, in that it sets forth in a single count an action for 'insulting words' and an action for 'assault and battery'." In discussing the concept of duplicity, the Virginia Supreme Court made clear that the concept applies to the uniting of two causes of action in the same pleading. The Court went on to note that since "duplicity is a defect of form and not of substance ... such imperfection in a notice of motion for judgment is harmless and not fatal." *Id.* at 424.

The duplicity alleged by Jay-Ton involves two separate pleadings, *not* two causes of action in one pleading. Therefore, while a factual argument might be made that parts of the Bowen Counterclaim are "duplicative" of the Verified Grounds of Defense, there is no legal "duplicity." Even if there were an argument that the two separate pleadings are duplicitous, the clear trend for decades in the Commonwealth of Virginia has been away from elevating form over substance, and substance is the standard by which pleadings are now judged. *Id.*

Since the issuance of the Opinion in the *Felvey* case, the Virginia Supreme Court adopted Rules that address pleading. The Rules of the Virginia Supreme Court were originally adopted in 1950, with the last substantial reorganization in 1972. Rule 1:4(d) provides that every pleading will be sufficient if it

"clearly informs the opposite party of the true nature of the claim or defense." Therefore, to the extent that Bowen's Counterclaim contains allegations also set out in its Verified Grounds of Defense, it is actually in furtherance of the standard established by Rule 1:4(d) requiring that the opposite party be clearly informed of the true nature of claims or defenses. Accordingly, Jay-Ton's Motion to Strike Counterclaim is denied. Since the counterclaim remains for consideration, Jay-Ton's motion for nonsuit must be addressed.

## C. *Nonsuit*

Our analysis of plaintiff's motion for nonsuit begins, as it must, with the text of the statute, asking what that text means. Analysis of the text is informed by relevant precedent. Virginia Code § 8.01-380(D) provides that: "[a] party shall not be allowed to nonsuit a cause of action, without the consent of the adverse party who has filed a counterclaim, cross-claim or third-party claim which arises out of the same transaction or occurrence as the claim of the party desiring to nonsuit unless the counterclaim, cross-claim or third-party claim can remain pending for independent adjudication by the court." Jay-Ton's Motion for Judgment seeks payment by Bowen of $96,050.00 plus interest and attorney's fees based upon an alleged breach of express and implied contractual obligations. Bowen's Counterclaim against Jay-Ton seeks $82,733.00 in damages based upon Jay-Ton's overstatement of the percentage of work completed, as well as a setoff of that amount against the $96,050.00 claimed by Jay-Ton.

At common law, a plaintiff was not entitled to a nonsuit if the rights of the defendant would be prejudiced by the dismissal of the action. This concept was codified in Va. Code § 8.01-380(D) by prohibiting a nonsuit if a counterclaim could not be independently adjudicated. Kent Sinclair & Leigh B. Middleditch, Jr., *Virginia Civil Procedure*, § 13.2 (3d ed. 1998); *Bremer v. Doctor's Bldg. Partnership*, 251 Va. 74, 80, 465 S.E.2d 787, 791 (1996). While it would appear that "any claim that could remain pending for decision would, in one sense, be capable of independent adjudication, the Virginia Supreme Court held in *Gilbreath v. Brewster*, 250 Va. 436, 442, 463 S.E.2d 836, 839 (1995), that a counterclaim for fifty dollars in an automobile accident case was not a nullity and, more importantly, that its adjudication would require determination of the cause of the accident which was the subject of the plaintiff's claims." Sinclair & Middleditch, *supra*, at 570. For that reason, the Virginia Supreme Court held that adjudication of the counterclaim would be

adjudication of the claim in chief as well, and it was not a case where the counterclaim would be left pending and could be adjudicated independently. Sinclair & Middleditch, *supra*, at 570-71; *Gilbreath*, 250 Va. at 442, 463 S.E.2d at 839. Possibly seeking to prevent future arguments over the collateral estoppel effect of adjudicating the counterclaim independent of the motion for judgment, the Court noted that resolution of the $50.00 claim for property damage contained in the counterclaim "would require determination of [plaintiff's] liability for the accident," and that therefore defendant's counterclaim could not be independently adjudicated because "adjudication of one claim would be an adjudication of both." *Id.*

As noted in the discussion of this issue in *Virginia Civil Procedure*, "[t]his understanding of independent adjudication will mean that in most circumstances where the counterclaim, cross-claim, or third-party claim to be left pending after a nonsuit involves the same transaction as that pleaded in the plaintiff's pleading, the nonsuit will not be permitted." Sinclair & Middleditch, *supra*, at 571. Because Bowen's counterclaim requests that the Court make a determination of the amounts owed by Jay-Ton to Bowen under the contract and then apply that amount against the amount sought by Jay-Ton in its motion for judgment, an adjudication of the counterclaim "would be an adjudication of both." *Gilbreath*, 250 Va. at 442, 463 S.E.2d at 839. Accordingly, Jay-Ton's motion for a nonsuit must be denied.

### D. *Motion to File Reply Pursuant to Rule 3:12*

Jay-Ton's Motion to File Reply Pursuant to Rule 3:12 seeks leave of the Court to file a reply to paragraph 17 of Bowen's Verified Grounds of Defense.[2] However, if no "new matter" was pleaded in paragraph 17 of Bowen's Verified Grounds of Defense, as Jay-Ton contends, then no "reply"[3] under Rule 3:12 is necessary.

---

[2] Among the pleadings addressing this issue is a May 30, 2003, letter to the Court on behalf of Jay-Ton, which was filed without leave of Court. The Court will exercise its discretion to accept the letter-pleading, but reminds counsel that where pleadings are permitted to be filed after oral argument, the parties should limit themselves to those pleadings ordered to be filed with leave of Court or seek leave to file additional pleadings. *See* Rule 4:15 of the Rules of the Virginia Supreme Court.

[3] During oral argument, the parties addressed the federal counterpart to Rule 3:12. There appears to be no requirement for the filing of a reply to a "new matter" in the Federal Rules of Civil Procedure, which provide at Rule 7 that a reply is mandatory

## 1. *New Matter*

Turning to the text of Rule 3:12, it provides that *if* an affirmative defense sets up a "new matter" and contains words expressly requesting a reply, a reply shall be filed within twenty-one days. Paragraph 17 of the Verified Grounds of Defense states that "[t]he owner of the project has not paid Bowen for the amounts sought by Jay-Ton in the Motion. Jay-Ton's claim is barred by the terms of article 5.2 of the Subcontract, and a reply is expressly requested." The plain language of the text indicates that the affirmative defense must be "new" – not something previously pleaded. The plain language further indicates that if it is new, it must also be "matter." *Black's Law Dictionary* defines "matter" as "[s]ubstantial facts forming basis of claim or defense; facts material to issue; substance as distinguished from form; transaction, event, occurrence; subject-matter of controversy." *Black's Law Dictionary, supra*, at 882 (5th ed. 1979). This question of whether a "new matter" was pleaded was addressed by the Virginia Supreme Court in *City of Hopewell v. Cogar*, 237 Va. 264, 377 S.E.2d 385 (1989). In that case, the City of Hopewell filed a declaratory judgment action against various partners of a law firm who performed work for the city during its attempts to annex a portion of Prince George County. The city asserted that the firm had submitted a bill for $48,239, but that the firm's services had to be duplicated when the city retained other counsel to succeed the firm in representing the city. *Id.* at 266, 377 S.E.2d at 386. The defendants filed an answer combined with an "Affirmative Defense" in which they requested that the court enter judgment in their favor for the $48,239 plus an additional $3,095.79 for costs advanced. The Supreme Court concluded that the affirmative defense set up a new matter. *Id.* at 269, 377 S.E.2d at 388. The Court said "[t]he new matter was an assertion that in addition to the sum for legal services stated in the motion for declaratory judgment, the defendants were entitled to an additional sum for costs advanced." *Id.*

Several circuit courts have addressed this issue since the Virginia Supreme Court did so in *Cogar*. In *Executive Homes Realty Corp. v. Mathews*, 38 Va. Cir. 486 (Williamsburg/James City County 1996), a real estate broker sought

---

only to a counterclaim, not to "new matter" and affirmative defenses. *See Brinich v. Reading Co.*, 9 F.R.D. 420 (E.D. Pa. 1949); *Colman v. Pitzer*, 160 F. Supp. 862, 863 (W.D. Pa. 1958) (recognizing that a party is not required under the Federal Rules to reply to new matter denominated as such in its answer because such responses are automatically deemed denied unless the court orders a response).

to collect its sales commission by filing suit against its clients. The clients filed a counterclaim and third-party motion for judgment. In the real estate broker's answer to the counterclaim and third-party motion for judgment, it was alleged that the clients' breach of fiduciary duty claim was barred by the statute of limitations, and a reply was requested. *Id.* at 490. Because the real estate broker had not raised the timeliness issue prior to the filing of the answer to the counterclaim and third-party motion for judgment, the court held that the allegation was a "new matter."[4] In *Oden v. Conway*, 47 Va. Cir. 106 (Rockingham County 1998), an invitee of a tenant who rented a single-family residence from defendants was injured while visiting the premises. In defendants' pleading asserting affirmative defenses of contributory negligence and assumption of the risk, they requested a reply. No reply was filed, but the court granted leave to the plaintiff to file a late reply. *Id.* at 109. By doing so, the court implicitly recognized the affirmative defenses as "new matter," since no reply would be necessary if no "new matter" had been pleaded. While these circuit court decisions are not binding on this Court, they are persuasive authority which this Court finds instructive.

The Motion for Judgment clearly does not allege that the owner has failed to pay Bowen. Therefore, Bowen's affirmative defense alleging that Portsmouth Associates has failed to pay Bowen is "new" in the sense that it was not previously pleaded. The Court finds unpersuasive Jay-Ton's suggestion that the contents of paragraph 17 of the Grounds of Defense are not "new matter" because they are substantially similar to defenses asserted in paragraphs 15 and 16. Neither paragraphs 15 nor 16 contain the specific assertion that the owner of the project has not paid Bowen for the amounts owed and that the claim is therefore barred by the subcontract provisions on that point.[5] Therefore, the contents of paragraph 17 set up something "new"

---

[4] This Court disagrees with the reading of Rule 3:12 expressed in *P & T Enterprises, L.L.C. v. Commonwealth Surety Associates, Ltd.*, 39 Va. Cir. 286, 290 (Richmond 1996), wherein it is suggested that the failure of a party to reply to a new matter, once requested, results in the new matter being denied or avoided. While the rule is otherwise in the federal system, Rule 3:12 states that the new matter is denied or avoided only when a reply is *not* requested. Rule 3:12 does provide that all allegations contained in a reply to new matter shall be taken as denied or avoided without further pleading.

[5] Even if the contents of paragraphs 15 and 16 were read to set up the same new matter as alleged in paragraph 17, the Court does not view such allegations appearing in the same pleading as nullifying the Rule 3:12 requirement mandating a

requiring a response. The affirmative defense alleging the absence of payment is also a "matter," since it states facts "forming [the] basis of [a] claim or defense." This conclusion is consistent with the precedents discussed above, which also apply the plain meaning of the text. In *Cogar*, the additional sums sought by the defendants were clearly new matter, as were the new legal defenses set up in the affirmative defenses of *Mathews*. Accordingly, paragraph 17 of the Bowen Grounds of Defense sets up a "new matter" requiring a response pursuant to Rule 3:12.

*2. Standard for Reviewing Motion to File Late Reply*

The parties dispute the appropriate standard to apply in reviewing Jay-Ton's request to file a late reply pursuant to Rule 3:12. Again, our analysis begins with the governing text, in this case, Rule 1:9 of the Rules of the Virginia Supreme Court. Rule 1:9 provides that "[t]he time allowed for filing pleadings may be extended by the court in its discretion and such extension may be granted although the time fixed already has expired. . . ."[6] Analysis of Rule 1:9 is informed by relevant precedent, both binding and instructive. In *Emrich v. Emrich*, 9 Va. App. 288, 387 S.E.2d 274 (1989), the Virginia Court of Appeals considered a case in which a wife requested leave of court to file a late answer, which she claimed was late because of her husband's deception. That Court first observed that the Virginia Supreme Court said in *Worsham v. Nadon*, 156 Va. 438, 446, 157 S.E. 560, 562 (1931), that "prescribing [a] time within which a defendant may and shall file his answer or other defense, is not to cut off the orderly presentation of defenses, or to set a trap for the unwary defendant by which a plaintiff may, by delaying the prosecution of his cause, cut off the defendant from a full defense or escape the necessity of proving his

---

timely reply where new matter that was not in a prior pleading is alleged and a reply is requested.

[6] In the federal courts, the standard for considering a request for relief from a default is set forth in the Federal Rules of Civil Procedure. Rule 55(c) provides that "for good cause shown the court may set aside an entry of default" by the Clerk of Court. Rule 60(b) is the vehicle for a party to seek relief from final judgment based upon one of six grounds, the primary one being "mistake, inadvertence, surprise, or excusable neglect." Reading the two rules in conjunction, the federal courts in Virginia recognize that motions to set aside default are addressed to the sound discretion of the trial court. *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 810-11 (4th Cir. 1988).

case." It went on to note that its "purpose is to prevent unconscionable delay in the orderly procedure in a chancery cause being caused by dilatory tactics on the part of the defendant or by the neglect of the defendant, where the plaintiff has shown due diligence on his part in the prosecution of the cause."

The Court of Appeals in *Emrich* also noted that broad discretion has been given to trial courts in determining whether to extend the time for filing pleadings under Rule 1:9. *Emrich*, 9 Va. App. at 292, 387 S.E.2d at 275. The Court stated that an appellate court, "[i]n determining whether a trial court has abused its discretion by granting or denying leave to file a late pleading," should look to "the existence or absence of good cause for the delay, together with other compelling circumstances...." *Id.* Rule 1:9 "is not intended to prevent a defendant from making a full defense, but to expedite the cause before the court and avoid delay through dilatory tactics." *Id.* A "dilatory delay is an unreasonable or bad faith delay attributable to the *moving* party; it is *not* a delay resulting from good faith actions or one that is induced by the opposing party." The Court of Appeals concluded by stating that "trial courts applying Rule 1:9 must, in the proper exercise of discretion, screen for those cases where the circumstances involved demonstrate good cause for the delay or where leave is otherwise necessary to achieve the ends of justice." *Id.* at 293, 387 S.E.2d at 276.

The question of whether a trial court properly exercises it discretion under Rule 1:9 "depends upon the circumstances of each particular case." *Id.* at 293, 387 S.E.2d at 276. A trial court "may properly refuse an extension where the delay is due to negligence or carelessness on the part of a party." Moreover, in elaborating on the circumstances in which a trial court can properly refuse an extension, the Court noted that "[i]nadvertence or failure to exercise due diligence under the circumstances in responding to legal process does not constitute a reasonable or legal excuse for failure to comply with filing requirements." *Id.* However, the circumstances that would support an extension, "include lack of prejudice to the opposing party, the good faith of the moving party, the promptness of the moving party in responding to the opposing parties' decision to progress with the cause,[7] the existence of a

---

[7] In *Lockhart v. Baxter*, 12 Va. App. 600, 603-04, 405 S.E.2d 434, 437 (1991), the Virginia Court of Appeals reiterated that "inadvertence or failure to exercise due diligence under the circumstances in responding to legal process does not constitute a reasonable or legal excuse for failure to comply with filing requirements" and concluded that due diligence by the moving party can be examined in light of the promptness with which remedies are pursued.

meritorious claim or substantial defense, the existence of legitimate extenuating circumstances, and the justified belief that suit has been abandoned or will be allowed to remain dormant on the docket." *Id.* (citation omitted). Finally, the Court recognized that this list of justifiable circumstances is not exhaustive, and that "application of the rule 'rests in the sound judicial discretion of the trial court. . . .'" *Id.*

Jay-Ton contends that the recent decision by the Virginia Supreme Court in *Shaheen v. County of Mathews*, 265 Va. 462, 579 S.E.2d 162 (2003), also informs the standard for applying Rule 1:9. At oral argument in this matter, Jay-Ton conceded that *Shaheen* does not trump *Emrich*, but contended that the Virginia Supreme Court's position is now clearer as to when a late response to a request for admission should be filed and that, if the Virginia Supreme Court would allow the filing of a late response on the facts of *Shaheen*, then the Court would allow a late response on these facts. While this Court agrees that *Shaheen* is informative, it is not authority on point, since the standard of discretion governing Rule 4:11 is set out in the rule itself. Furthermore, Rule 1:9 does not contain a standard as exacting as that found in Rule 4:11.

The standard set out in *Emrich* is also consistent with various circuit court opinions decided before and after *Emrich*, which opinions the Court finds persuasive and instructive, while not binding. For example, a series of opinions by then-Judge (now Senior Justice) Stephenson tracks the reasoning of *Emrich*. In *Nida v. Hooker*, 4 Va. Cir. 430 (Allegheny County 1976), Judge Stephenson considered a request, pursuant to Rule 1:9, by a defendant to file a responsive pleading after the expiration of twenty-one days from the date process was served on the defendant. The defendant's attorney filed a letter with the court indicating that the transmission of suit papers from his client to his office had been delayed "through some clerical mishap." *Id.* A hearing scheduled for presentation of the defendant's motion was subsequently cancelled because defendant had nothing further to offer than his written explanation. Judge Stephenson noted that he had "always been rather reluctant to order a default judgment if any reasonable or plausible explanation were advanced for not doing so. However, where, as here, no explanation is given, I feel that the court, in exercising its discretion, has little choice but to enter such judgment." *Id.* at 431. He stated that such statements, taken alone, amount to a showing of gross neglect and carelessness when taken at face value, and "do not constitute a reasonable or legal excuse for his failure to comply with the rule." *Id.* (*citing Cooper v. Davis*, 199 Va. 472, 100 S.E.2d 691 (1957)). The standard set out in *Nida* tracks that adopted in *Emrich*.

On the other hand, Judge Stephenson allowed the filing of late pleadings pursuant to Rule 1:9 in the case of *Standard Farms, Inc. v. Alexander*, 4 Va. Cir. 463 (Augusta County 1978). A petitioner had filed an action for declaratory judgment between petitioner and respondents regarding a first refusal agreement and to remove a cloud on title, and some respondents sought leave to file late pleadings. The court noted that, in such suits, the court hears and decides both matters of fact and law and that, in such a case, "there is more justification for permitting late filing of responsive pleadings than there might be in other types of cases. . . ." *Id.* at 464. Accordingly, the court allowed the late filing because it "would promote the ends of justice" and to "permit it would not prejudice the petitioner's case." *Id.* Judge Stephenson also allowed such a late filing in *Greene v. Smith*, 4 Va. Cir. 488 (Clifton Forge 1979), a suit where the City of Clifton Forge had failed to timely respond to a notice of motion for judgment seeking damages for injuries allegedly caused by the negligence of a city employee. After noting that the circumstances of the particular case govern the exercise of discretion, the court stated that, after filing suit, the plaintiff took no further steps to cause his case to progress. The court also noted that the attorney's secretary had left his employment after he had prepared the pleading and instructed her to file the pleading. He only learned after the deadline had passed that she had not filed the pleading before leaving his employment. The court allowed the late filing, stating that the ends of justice would best be served by allowing such filing. *Id.* at 489-90.

In *Chittum v. Chittum*, 4 Va. Cir. 280 (Frederick County 1985), the court allowed the filing of a late pleading pursuant to Rule 1:9 and adopted a standard informed by the "interest of justice" in allowing a presentation of defenses, as well as by the delay of the opposing party in objecting to the late filing of the pleading. The court noted that the "[r]ules for requiring timely filing of pleadings have two basic objectives. First, it is essential that some standard of certainty and definiteness be established so that all parties to a proceeding may know the time by which pleadings are required to be filed. Second, without that standard, and adherence to it, the progress and prompt disposition of cases is hindered and the entitlement of a party desiring prompt disposition is to a degree frustrated." *Id.* at 282. Similarly, the court in *Mack v. Starwood Hotels*, 57 Va. Cir. 390 (Norfolk 2002), allowed the filing of a late grounds of defense pursuant to Rule 1:9. The court noted that, where a party has "acted in good faith and not caused egregious delay, courts should

exercise their discretion to allow adjudication on the merits." *Id.* at 293, citing *Wilcox v. Lauterbach Elec. Co.*, 233 Va. 416, 357 S.E.2d 197 (1987).

This exact question (what is the appropriate standard), though in a different factual and procedural context, was considered in *J. B. Rhodenhizer Const., Inc. v. Jupiter McGill Housing Group, L.L.C.*, 50 Va. Cir. 357 (Rockingham County 1999). In that case the defendant failed to file responsive pleadings within twenty-one days and the plaintiff filed a motion for entry of default judgment, while the defendant filed a motion for enlargement of time to respond. The defendant contended "that the proper standard with which to determine [the] case is whether or not there has been prejudice to the plaintiff," while the plaintiff contended that the standard was "excusable neglect." *Id.* at 357-58. In considering these alternate contentions, the court reviewed the Virginia Supreme Court's Opinion in *Levine v. Lacy*, 204 Va. 297, 301, 130 S.E.2d 443, 446 (1963), affirming a trial court's refusal to extend the filing time for responsive pleadings. That court also noted that, in *Levine*, the Supreme Court adopted a New Mexico state decision in which a defendant contended that the appellate court should reverse the default judgment against them "in justice" to their cause. *McCanna v. Mutual Investment & Agency Co.*, 37 N.M. 597, 26 P.2d 231 (1933). The New Mexico court said that "to do justice to both litigants herein, we must apply the principles of law and adhere to the established rules of practice and procedure which are known and established in this jurisdiction, for otherwise, what seems justice to one would appear as injustice to another. Justice within the law is justice to all." *Id.* at 598, 26 P.2d at 231-32. After reviewing *Blinder v. S.C.C.*, 227 Va. 24, 313 S.E.2d 652 (1984), in which a default judgment was affirmed because of inexcusable neglect, and *Emrich*, the *J. B. Rhodenhizer Construction* court concluded that "it is quite clear to this court that the correct standard to consider when ruling on a request for an extension of time in which to file an answer is that of excusable neglect." *J. B. Rhodenhizer*, 50 Va. Cir. at 359. That court stated that it is not excusable neglect for a large company not to have its staff trained to recognize legal process, and the court entered default judgment.[8] *Id.* at 359-60.

---

[8] In *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894 (4th Cir. 1987) the U.S. Court of Appeals affirmed a U.S. District Court's denial of relief, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, from a default judgment. In *Park* an insurer received process in its mailroom and inexplicably lost the papers. No attorney was contacted and no answer was filed, thus resulting in default being entered. The

A review of these cases reveals that the appropriate standard for determining whether to allow the late filing in this case is the standard set out in *Emrich* (sometimes characterized as "reasonable excuse" or "excusable neglect"), and the application of that standard is informed by the factors discussed above from *Emrich* (citing prior Virginia Supreme Court decisions) and the various circuit court opinions that the Court finds instructive. While prejudice is a factor that the *Emrich* court listed for consideration, it is only one of many and must be considered in light of the other listed factors.

### 3. *Motion to File Late Reply*

The "excusable neglect" factors set out above focus on the source of the default, and this focus represents an equitable balance between the preference for trials on the merits and the judicial system's need for finality and efficiency in litigation that provides equitable treatment to all litigants. *Accord Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988). A review of the cases set out above reveals that when a party is blameless and an attorney is at fault, the former interests are given more weight and default is less likely. However, when a party is at fault, the latter interests are given more weight and the party should defend its conduct in order to show excusable neglect. *Accord Augusta*, 843 F.2d at 810-11. Moreover, in applying the "excusable neglect" standard set out in *Emrich*, this Court will resolve all doubts in favor of the defaulting party, particularly since the motion to file late reply is being considered in conjunction with Bowen's motion for summary judgment. *See Meredith v. LeBlanc*, 245 Va. 135, 427 S.E.2d 189 (1993) (at summary judgment stage, court must adopt those inferences from the facts that are most favorable to the non-moving party); *see also Bloodworth v. Ellis*, 221 Va. 18, 267 S.E.2d 96 (1980) (in deciding summary judgment motions courts must adopt those inferences most favorable to the party whose evidence it is sought to have struck, unless the inferences are strained, forced, or contrary to reason).

---

Court held that the insurer had a meritorious defense, but it had failed to show excusable neglect justifying relief from default. *Id.* at 897.

[9] Federal courts in Virginia must resolve doubts, as to the propriety of giving relief from default, in favor of the defaulting party. *Augusta*, 843 F.2d at 811; *accord Maaco Enterprises, Inc. v. Beckstead*, 2002 U.S. Dist. LEXIS 23623, at *5 (E.D. Pa. 2002).

The defendant's attorney has stated that no reply was filed because he did not believe that a "new matter" had been set forth in the grounds of defense, despite the fact that a response was requested. The first principle for consideration is whether Jay-Ton sought to delay through dilatory (unreasonable or bad faith) tactics. *Emrich*, 9 Va. App. at 293, 387 S.E.2d at 276. There is no evidence of such tactics in this case. Jay-Ton's attorney did not believe that the contents of paragraph 17 of the Grounds of Defense stated a "new matter" and therefore he did not file a response on behalf of his client. This does not describe a tactic attributable to Jay-Ton itself. The Court of Appeals cautioned that trial courts must screen for cases where circumstances demonstrate good cause for delay or where leave is necessary to achieve the ends of justice. *Id.* An attorney's decision not to respond because he does not believe a "new matter" was pleaded, even though a reply is expressly requested, is not the kind of party-fault the *Emrich* court sought to prevent. *Accord United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982) ("justice demands that a party not be disadvantaged by the errors or neglect of his attorney"); *accord Maaco*, 2002 U.S.Dist. LEXIS 23623, at *9 ("while [defaulting party's] tardiness reveals a regrettable lack of diligence on the part of defense counsel and is not to be condoned, [defaulting party's] actions do not rise to the level of inexcusable conduct"). Moreover, such a failure by a litigant's attorney is not "negligence or carelessness on the part of a party" nor "[i]nadvertence or failure to exercise due diligence under the circumstances." *Emrich*, 9 Va. App. at 293, 387 S.E.2d at 276.

Among the principles that militate in favor of granting leave to file a late response, according to *Emrich*, is lack of prejudice to the opposing party. The issue of prejudice was addressed at oral argument, and, in this case, there is no suggestion of prejudice to Bowen "beyond that suffered by any party which loses a quick victory." *Accord Augusta Fiberglass*, 843 F.2d at 812. There has been no suggestion that Bowen's claim will be impaired in any way should Jay-Ton be allowed to file a late Rule 3:12 reply, nor has there been any suggestion that any relevant evidence has become lost or made unavailable. *Accord Maaco*, 2002 U.S. Dist. LEXIS 23623, at *6. Indeed, if there were no need to look outside the contract, as Bowen suggests, there could be no evidentiary prejudice. *See, e.g., Galloway Corp. v. S. B. Ballard Const. Co.*, 250 Va. 493, 501, 464 S.E.2d 349, 354 (1995). As for the good faith of Jay-Ton, as already stated, the proffered reason for the failure to reply is counsel's belief that no reply was necessary. Therefore, by definition, there appears to be

no opportunity for anything other than good faith by Jay-Ton under these facts.

Turning to the promptness of Jay-Ton in responding to Bowen's decision to "progress with the cause" and seek summary judgment based upon Jay-Ton's failure to file a Rule 3:12 reply, *Emrich*, 9 Va. App. at 293, 387 S.E.2d at 276, the pleadings reveal that Bowen filed its Verified Grounds of Defense on June 24, 2002. In paragraph 17 of that pleading, Bowen requested a reply to the "new matter" it asserted. When no reply was filed, Bowen filed a Motion for Summary Judgment on September 23, 2002. On October 3, 2002, Jay-Ton filed a Reply to Motion for Summary Judgment and a Motion to File Reply Pursuant to Rule 3:12, among other pleadings. Therefore, Jay-Ton replied within two weeks of Bowen's decision to move forward and seek summary judgment. *See Lockhart v. Baxter*, 12 Va. App. 600, 603-04, 405 S.E.2d 434, 437 (1991) (noting due diligence of moving party can be examined in light of the promptness with which remedies are pursued); *accord Augusta Fiberglass*, 843 F.2d at 812 (noting defaulting party moved for relief within two weeks of entry of judgment). Moreover, the Jay-Ton response cannot be viewed in a vacuum. Jay-Ton consented to Bowen's filing an untimely counterclaim, as reflected in the Consent Decree entered by the Court on August 30, 2002. Prior to the entry of that Consent Decree, counsel for the respective parties discussed by telephone the issue of whether Jay-Ton was entitled to payment prior to Bowen's receiving payment from the owner. While Bowen contends such discussion does not take the place of a Rule 3:12 reply, it does not contest that such discussion took place. Jay-Ton also filed interrogatory answers on September 13, 2002, nearly two weeks prior to the filing of Bowen's summary judgment motion. These answers asserted Jay-Ton's belief that the pay-when-paid contract provision did not prohibit it from recovering on its subcontract. Accordingly, it can hardly be said that Jay-Ton failed to move promptly once Bowen moved forward with the filing of its summary judgment motion.

The next factor *Emrich* lists for consideration is the existence of a meritorious claim or substantial defense. Reason suggests that the "underlying concern is … whether there is some possibility that the outcome … after a full trial will be contrary to the result achieved by the default." *Accord Augusta Fiberglass*, 843 F.2d at 812 (*quoting* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 2697, p. 531 (2d ed. 1983)). Jay-Ton alleges that it has valid defenses to the "pay-when-paid" response of Bowen. It has been said in similar circumstances that the standard for proof of a

meritorious defense does not require the defendant "to prove beyond a shadow of a doubt that it will win at trial, but merely to show that it has a defense to the action which at least has merit on its face." *Accord Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987).

Jay-Ton contends that Portsmouth Associates, the owner of the project, is affiliated with Bowen to an extent that Bowen was able to influence the decision of Portsmouth Associates not to pay Bowen. Jay-Ton further contends that Bowen influenced or made this decision despite the fact that monies were available to make payments due Jay-Ton. Bowen denies the allegation. However, the question is whether the defense, referred to as the "prevention doctrine," has merit on its face. The Virginia Supreme Court adopted the following rule in *Parrish v. Wightman*, 184 Va. 86, 93, 34 S.E.2d 229, 232 (1945): "Where a contract is performable on the occurrence of a future event, there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly where it is dependent in whole or in part on his own act; and, where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability." *See Jack Quinn's Norfolk, L.L.C. v. Commonwealth Enterprises, L.L.C.*, 57 Va. Cir. 396 (Norfolk 2002) (recognizing this legal principle as the "prevention doctrine"). The federal courts in Virginia are also bound by this principle of law since the Fourth Circuit Court of Appeals recognized its application in a contractual pay-when-paid dispute in *Moore Brothers Co. v. Brown & Root, Inc.*, 207 F.3d 717, 725 (4th Cir. 2000) (noting that the "Supreme Court of Virginia recognized the prevention doctrine in *Parrish*"). Intertwined with Jay-Ton's prevention doctrine argument is its argument that the subcontract is ambiguous because some payment provisions contain no "pay-when-paid" language and because the prime contract contains no such provision, thereby requiring the Court to consider evidence of the parties' intent. *Galloway Corp.*, 250 Va. at 502, 464 S.E.2d at 354 (applied in the context of a pay-when-paid clause dispute). The subcontract does contain more than one provision addressing payment. Furthermore, Jay-Ton has pointed out cases that arguably provide defenses based upon these positions. *See Gulf Constr. Co. v. Self*, 676 S.W.2d 624, 630 (Tex. App. 1984); *OBS Co. v. Pace Constr. Corp.*, 558 So. 2d 404, 406 (Fla. 1990). Since the defenses on which Jay-Ton seeks to rely have been recognized in Virginia and since the Virginia-recognized defenses have been applied in similar factual contexts in *Moore*

*Brothers* and *Galloway Corp.*, Jay-Ton has met the requisite standard of facial validity on the prevention doctrine/contractual ambiguity defense.

Jay-Ton also contends that Bowen lacked a valid Commonwealth of Virginia Contractor's License when it accepted Jay-Ton's bid for the project, allegedly making the contract voidable. Virginia Code § 54.1-1115(C); *see Woolard Mechanical v. Jones Development*, 235 Va. 333, 338, 367 S.E.2d 501, 504 (1988); *see also Butler v. Creative Design Builders, Inc.*, 24 Va. Cir. 362, 365-66 (Louisa County 1991); *cf. Dodson Roofing Co. v. Johnson*, 32 Va. Cir. 400 (Richmond 1994). The presence of a meritorious defense on this issue requires Jay-Ton to proffer sufficient evidence to make out a facially valid defense to Bowen's argument that the pay-when-paid clause of the subcontract prevents Jay-Ton from succeeding in this suit. Because Jay-Ton relies upon the bare assertion that it has a meritorious defense on this issue, because it was asserted in its May 30, 2003, letter to the Court (which letter was not part of the briefing schedule and is not responded to by Bowen[10]), due to the scarcity of argument on this issue, and because the Court finds Jay-Ton has met the facial validity standard on its prevention doctrine/contractual ambiguity defense, the Court will not make a determination as to whether Jay-Ton has met the facial validity standard regarding this defense.

The existence of legitimate extenuating circumstances, another factor recognized by *Emrich*, 9 Va. App. at 293, 387 S.E.2d at 276, is subsumed in this case by the factors discussed above. The failure of counsel to timely respond is, under these facts, an extenuating circumstance militating in favor of permitting the late filing by an innocent party.

Applying these principles to the present case, the Court exercises its discretion and permits the filing of the late reply pursuant to Rule 3:12. For all these reasons, Jay-Ton's motion to file a late reply pursuant to Rule 3:12 is granted.

### 4. *Sanctions for Tardiness*

While the Court will grant Jay-Ton's motion to file a late reply pursuant to Rule 3:12, a sanction is appropriate in order to address the situation before the

---

[10] The Court chooses not to request a response from Bowen on this issue since there is another facially valid defense and since doing so would unduly delay a ruling on these issues.

Court.[11] Counsel for Jay-Ton has proffered that the decision not to file a timely reply was made by counsel because counsel did not believe a "new matter" was pleaded in the Verified Grounds of Defense. The better course of action would have been the filing of a motion with the Court prior to the response deadline, rather than essentially ignoring the request for a reply based upon the assumption that no new matter was pleaded. In *Mack v. Starwood Hotels*, 57 Va. Cir. 390 (Norfolk 2002), the court exercised its discretion to allow the late filing of a grounds of defense where a misunderstanding may have occurred between plaintiff's counsel and defendant's counsel, but stated that "if the plaintiff has incurred attorney's fees in unsuccessfully seeking default judgment, this court will consider an award of attorney's fees against the defendant for its tardiness in answering" and requested briefs on that issue. *Id.* at 390. While the Court will permit Jay-Ton to file its Rule 3:12 reply, the Court will consider an award of some attorney's fees against Jay-Ton for its tardiness in responding to Bowen's straightforward request for a reply, a request about which Jay-Ton's counsel was aware, but to which counsel chose[12] not to reply due to counsel's belief that no "new matter" was asserted. Pursuant to Rule 4:15(b), the Court encourages counsel to seek agreement on this issue before filing any such motion.

### E. *Summary Judgment*

Rule 3:18 provides that, if it appears from the pleadings that the moving party is entitled to summary judgment, the court shall enter summary judgment. However, it also provides that summary judgment shall not be granted where any material fact is genuinely in dispute. For the reasons

---

[11] Counsel for Jay-Ton noted in its May 30, 2003, letter that "[s]hould this Court have any concerns over the conduct of counsel for Jay-Ton which resulted in this case being in its current posture, then appropriate sanctions could be imposed."

[12] Jay-Ton submitted for the Court's consideration a recent Opinion in the matter of *Grimstead v. Tidewater Seniors Apartments, L.P.*, Civil Action No. 2:02cv535 (E.D. Va. April 24, 2003), in support of its argument that a late reply should be permitted. In that case, the Court granted a motion to set aside default, but imposed other sanctions which included a requirement that the defaulting party reimburse its opponent for all attorney's fees and costs associated with the default proceedings, including preparation of motions, briefs, and attendance at the oral argument. While the facts of this case are not as serious as those in *Grimstead*, some less severe monetary sanction seems appropriate in this case.

explained above, the Court will permit the filing of a late 3:12 reply. Accordingly, there are no admissions as a result of the late filing, and therefore summary judgment is not appropriate on the record before the Court since material facts are genuinely in dispute. The motion for summary judgment is denied.

## Conclusion

The defendant's motion for summary judgment is denied. The plaintiff's motion to file a reply pursuant to Rule 3:12 is granted, and its previously lodged "Reply Pursuant to Rule 3:12" is ordered filed. Plaintiff's motion to strike the counterclaim is denied. Plaintiff's Motion for Nonsuit is denied. It is so ordered.